IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

BERT VILLON and MARK APANA,        )        CIVIL NO. 08-00529 LEK-RLP
                                   )
          Plaintiffs,              )
                                   )
     vs.                           )
                                   )
MARRIOTT HOTEL SERVICES,           )
INC., DBA WAILEA MARRIOTT          )
RESORT,                            )
                                   )
          Defendant.               )
_____    )

**ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

          On February 18, 2011, Plaintiffs Bert Villon and

Mark Apana, on behalf of themselves and all others similarly

situated (collectively "Plaintiffs"), filed the instant Motion

for Class Certification ("Motion").  Defendant Marriott Hotel

Services, Inc., doing business as Wailea Marriott Resort

("Defendant"), filed its memorandum in opposition on March 28,

2011, and Plaintiffs filed their reply on April 4, 2011.  This

matter came on for hearing on April 19, 2011.  Appearing on

behalf of Plaintiffs were Shannon Liss-Riordan, Esq., and

Ashley Ikeda, Esq., and appearing on behalf of Defendant was

Richard Rand, Esq.  After careful consideration of the Motion,

supporting and opposing memoranda, and the arguments of counsel,

Plaintiffs' Motion is HEREBY GRANTED for the reasons set forth

below.

## BACKGROUND

Plaintiffs have each worked as food and beverage servers for the Wailea Marriott Resort ("the Resort"), which Defendant owns and/or operates. Plaintiffs filed the instant Class Action Complaint ("Complaint") on November 24, 2008. The Complaint alleges that the Resort imposes a service charge on the sale of food and beverages at its banquets and other events, but the Resort does not distribute the total proceeds of these service charges to its food and beverage servers as tip income. Further, the Resort allegedly does not disclose this fact to the customers. Plaintiffs claim that this practice results in a loss of tip income for Defendant's food and beverage servers. Plaintiffs argue that this is a violation of Hawai`i Revised Statutes § 481B-14, and it is actionable under §§ 481B-4, 480-2, and 480-13, as well as under state wage statutes, Hawai`i Revised Statutes §§ 388-6, 388-10, and 388-11, and under Hawai`i common law.

On June 2, 2009, in a related case, <u>Davis, et al. v. Four Seasons Hotel Ltd., et al.</u>, CV 08-00525 HG-LEK, then Chief United States District Judge Helen Gillmor certified the following question to the Hawai`i Supreme Court:

> Where plaintiff banquet server employees allege that their employer violated the notice provisions of H.R.S. § 481B-14 by not clearly disclosing to purchasers that a portion of a service charge was used to pay expenses other than wages and tips of employees, and where the plaintiff banquet server

employees do not plead the existence of
competition or an effect thereon, do the plaintiff
banquet server employees have standing under
H.R.S. § 480-2(e) to bring a claim for damages
against their employer?

[Davis, Certified Question to the Hawaii Supreme Court from the
United States Dist. Ct. for the Dist. of Hawaii in Civil No.
08-00525 HG-LEK, filed 6/2/09 (dkt. no. 75), at 6.]

The certified question was also applicable to the
instant case and, therefore, Senior United States District Judge
Samuel P. King issued an order staying the instant case pending a
decision by the Hawaii`i Supreme Court on the certified question
in Davis. [Minute Order, filed 7/17/09 (dkt. no. 43).]

The Hawai`i Supreme Court issued its opinion on
March 29, 2010. It answered the certified question as follows:
"Employees are 'any persons' within the meaning of HRS §§ 480-1
and 480-2(e) and are within the category of plaintiffs who have
standing to bring a claim under HRS § 480-2(e) for a violation of
HRS § 481B-14." Davis v. Four Seasons Hotel Ltd., 122 Hawai`i
423, 446, 228 P.3d 303, 326 (Hawai`i 2010). The Hawai`i Supreme
Court, however, also held that, "based on the allegations
contained in Employees' Amended Complaint, Employees have not
sufficiently alleged the 'nature of the competition' to bring a
claim for damages against Four Seasons under HRS §§ 480-2(e) and
480-13(a) for a violation of HRS § 481B-14." Id.

On June 22, 2010, this Court issued an order granting

3

Plaintiffs' motion to lift the stay and Plaintiffs' motion to amend their Complaint. [Dkt. no. 58.] Plaintiffs filed their Amended Class Action Complaint ("Amended Complaint") on June 28, 2010. [Dkt. no. 60.]

The Amended Complaint alleges that the Resort charges a service charge in addition to each function's food and beverage total. The Resort allegedly has a policy and practice of either retaining a portion of the service charge for itself or using that portion to pay managers and other non-tipped employees. The Amended Complaint alleges the following claims: Count I – violation of Hawai`i Revised Statutes §§ 481B-14, 481B-4, and 480-2; Count II – intentional interference with contractual and/or advantageous relations; Count III – breach of implied contract; Count IV – unjust enrichment; Count V – violation of Hawai`i Revised Statutes §§ 388-6, 388-10, and 388-11.

## I.   **Plaintiffs' Motion**

In the instant Motion, Plaintiffs seek certification of the proposed class pursuant to Fed. R. Civ. P. 23(a), and they argue that the proposed class meets the requirements of at least one of the subsections in Rule 23(b). Plaintiffs propose the following class: "all non-managerial food and beverage service employees who, [from July 30, 2004 to the present], have worked at banquets, functions, events, and small parties, or provided room service, where a service charge was imposed and where a part

of that service charge was kept by the Defendant or management
without adequate disclosure to customers." [Mem. in Supp. of
Motion at 22-23 (footnotes omitted); Stip. to Class Period, filed
4/26/11 (dkt. no. 91), at 3.] Plaintiffs note that Defendant may
claim that it made some form of disclosure for a period of time.
Plaintiffs assert that the adequacy of that disclosure goes to
the merits of the case and does not bear upon class
certification. [Mem. in Supp. of Motion at 23 n.7.] Plaintiffs
argue that the class should be restricted to employees who
receive tip income because Haw. Rev. Stat. § 481B-14 addresses
the distribution of service charges as "tip income" and therefore
it does not apply to employees who do not receive tip income.

        Plaintiffs allege that the instant case is appropriate
for class certification because the merits of the claims do not
rely on any individual class member's conduct. The claims are
based solely on Defendant's policies and practices and therefore
the factual issues are common to all members of the potential
class. Plaintiffs argue that the proposed class meets all of
Rule 23(a)'s requirements: commonality, typicality, numerosity,
and adequacy of representation. Further, Plaintiffs allege that,
under Rule 23(b)(3), common questions of law or fact predominate
over any issues affecting individual members, and a class action
is the superior method of pursuing these claims. Plaintiffs
acknowledge that they bear the burden of establishing these

elements, but they emphasize that whether they have stated a claim or whether they will ultimately prevail on the merits of their claims is not relevant to the class certification inquiry.

Plaintiffs argue that a number of courts in similar cases have granted class certification in actions by servers for failure to properly distribute service charges or other similar funds: Gurrobat, et al. v. HTH Corp., et al., Civil No. 08-1-2528-12, State of Hawai`i First Circuit Court;[1] Tuquero v. Maui Prince Hotel, LLC, Civ. A. No. 08-1-0705(1), State of Hawai`i Second Circuit Court; Moran, et al. v. Bay Tower, Inc., Civ. A. No. 97-6049A (Mass. Super. 2002);[2] Calcagno, et al. v. High Country Investor, Inc., Civ. A. No. 03-0707 (Mass. Super. 2006);[3] Benoit v. The Federalist, Inc., Civ. A. No. 04-3516 (Mass. Super.

---

[1] The Order Granting Plaintiff Raymond Gurrobat's Motion for Class Certification and for Approval of Class Notice and Dissemination Plan ("Gurrobat Certification Order"), filed March 25, 2010, together with the Gurrobat Order Granting Plaintiff's Motion for Partial Summary Judgment as to Defendants' Violation of HRS Chapter 388, Filed October 4, 2010 ("Gurrobat Summary Judgment Order"), filed December 6, 2010, is attached to the Memorandum in Support of Motion as Exhibit 4. The Gurrobat Summary Judgment Order is also part of Exhibit 2 to Plaintiffs' Reply.

[2] An excerpt from the Moran plaintiffs' Motion to Certify Class Action and the court's decision on that motion are attached to the Memorandum in Support of Motion as Exhibit 5.

[3] The order allowing Calcagno to proceed as a class action is attached to the Memorandum in Support of Motion as Exhibit 6.

2007);[4] <u>Shea v. Weston Golf Club</u>, Middlesex Civ. A. No. 02-1826

(Mass. Super. 2008);[5] <u>Black v. Cranwell Management Corp.</u>,

Berkshire Civ. A. NO. 07-0122 (Mass Super. 2010);[6] <u>Overka v.</u>

<u>American Airlines, Inc.</u>, 265 F.R.D. 14 (D. Mass. 2010); and

<u>Spicer v. Pier Sixty LLC</u>, 269 F.R.D. 321 (S.D.N.Y. 2010).  [<u>Id.</u>

at 3-4 & n.1.]

## II.  <u>Defendant's Memorandum in Opposition</u>

In its memorandum in opposition to the Motion,

Defendant first notes that Plaintiffs' claims are all based on

Haw. Rev. Stat. § 481B-14, even the purported common law claims

and the claim under Haw. Rev. Stat. Chapter 388.  [Mem. in Opp.

at 2-3 & n.1.]  Defendant argues that Plaintiffs' limitation of

the proposed class to non-managerial employees is improper

because § 481B-14 refers generally to "employees".

Defendant argues that nothing in § 481B-14 limits or

qualifies the term "employees".  If the legislature wanted to

distinguish between classes of employees, like management

employees and non-managerial employees or tipped employees and

---

[4] An excerpt from the <u>Benoit</u> plaintiffs' Motion for Class
Certification and the court's decision on that motion are
attached to the Memorandum in Support of Motion as Exhibit 7.

[5] The order granting the <u>Shea</u> plaintiffs' motion for class
certification in part is attached to the Memorandum in Support of
Motion as Exhibit 8.

[6] The order regarding the <u>Black</u> plaintiffs' Motion for Class
Certification is attached to the Memorandum in Support of Motion
as Exhibit 9.

non-tipped employees, the legislature could have easily done so. Defendant argues that the term "employees" by itself is not susceptible to different interpretations.  Under the plain language of § 481B-14 and the Hawai`i Supreme Court's decision in Davis, the scope of "persons" who are entitled to bring claims for alleged violations of § 481B-14 pursuant to Haw. Rev. Stat. § 480-2 is very broad.  Defendant also argues that, although the plaintiffs in Davis were banquet servers, nothing in the Hawai`i Supreme Court's Davis opinion supports the proposition that banquet servers are the only employees who have standing to sue for alleged violations of § 481B-14.

Defendant therefore argues that limiting the class in this case to non-managerial employees would open the door to inconsistent and/or varying adjudications for management and non-management employees.  Defendant argues that the central concern in class certification is the protection of the due process rights of the parties and non-parties.  Defendant contends that it would be inefficient for Defendant to litigate the same type of claims multiple times, and multiple litigations could expose Defendant to the risk of paying the same damages for the same events multiple times.  Defendant therefore argues that class adjudication would not be fair or efficient.  Further, the exclusion of management employees from the class could effectively extinguish the claims of the management employees.

Plaintiffs' proposed class in this case could assert that they
are entitled to the entire amount of the service charges.
Hypothetically, a class of management employees could also
subsequently assert entitlement to the entire amount of the
service charges, but the management class would not be able to
recover its share of the service charges if this Court finds that
the class of non-management employees is entitled to the entire
amount of the service charges.

Defendant argues that all but one of the cases that
Plaintiffs rely on to support the exclusion of management
employees are based on Massachusetts law.  Massachusetts law is
distinguishable from Hawai`i law and federal law in that
Massachusetts prohibits employees other than wait staff, service
employees, and bartenders from receiving tips.  [Id. at 12
(citing Mass Gen. L. c. 149 §§ 152A(b), 152A(c) (some citations
omitted)).]  Further, § 152A(d) specifically requires that the
service charge be remitted only to the wait staff, service
employees, and bartenders.  Defendant therefore argues that the
Massachusetts case law which Plaintiffs rely on is neither
precedential nor persuasive.  Defendant also emphasizes that, in
some of the cases which Plaintiffs cited, the court only
certified the class as to the § 152A claims and denied
certification as to the other claims.  [Id. at 14 n.14 (citing
Benoit, Shea).]

Defendant therefore asks the Court to deny the Motion and to decline to certify a class consisting of solely non-management employees.

III. **Plaintiffs' Reply**

In their reply, Plaintiffs point out that Defendant's sole point of opposition is that Plaintiffs' proposed class improperly excludes management employees.

Plaintiffs acknowledge that § 481B-14 does not define the "employees" who the statute protects, but Plaintiffs argue that the statute is clearly intended to protect employees who receive tips. Plaintiffs point out that both United States District Judge David Alan Ezra and a state First Circuit Court judge have found that the legislative history of § 481B-4 establishes that the legislature intended the statute to protect direct service employees who would otherwise receive tips. [Reply at 3 (citing Rodriquez, et al. v. Starwood Hotels & Resorts Worldwide, Inc., CV 09-00016 DAE-BMK, Order: (1) Granting in Part & Denying in Part Def.'s Motion to Dismiss; (2) Dismissing Counts I & II of the Complaint Without Prejudice, filed 2/4/09 (dkt. no. 93), at 54-55;[7] Gurrobat Summary Judgment Order; Excerpts of Gurrobat 11/17/10 Hrg. Trans. ("Gurrobat Hrg.

---

[7] The Rodriquez order is attached to the Reply as Exhibit 1.

Trans.") at 15).[8]]

Plaintiffs also note that, in <u>Apana, et al. v. Fairmont
Hotels & Resorts (U.S.) Inc.</u>, CV 08-00528 JMS-LK, United States
District Judge J. Michael Seabright recently approved a class
action settlement, and that class did not include management
employees. [<u>Apana</u>, Order Granting Final Approval of Class Action
Settlement, filed 3/3/11 (dkt. no. 97).] In addition, a state
Second Circuit Court judge also "certified a class for settlement
purposes, and that settlement did not include management
employees." [Reply at 4 (citing <u>Tuquero v. Maui Prince Hotel,
LLC</u>, Civ. A. No. 08-1-0705(1)).]

Finally, Plaintiffs argue that, even if management
employees could pursue a claim for a portion of Defendant's
service charges, that claim would not require the denial of the
instant Motion. The Court could alter the proposed class
definition to include management employees in the class.
Plaintiffs therefore urge the Court to grant the Motion.

### STANDARD

A plaintiff moving to certify a class has the burden of
showing that the proposed class satisfies the requirements of
Rule 23. <u>See</u> <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 614
(1997). The proposed class must meet each of the following

---

[8] The <u>Gurrobat</u> Summary Judgment Order, followed by excerpts
from the transcript of the hearing on the motion, are attached to
the Reply as Exhibit 2.

requirements:

>  (1) the class is so numerous that joinder of all members is impracticable;

>  (2) there are questions of law or fact common to the class;

>  (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

>  (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These requirements are known as: numerosity, commonality, typicality, and adequacy of representation. See, e.g., Poulos v. Caesars World, Inc., 379 F.3d 654, 664 (9th Cir. 2004).

In addition to meeting all of the Rule 23(a) requirements, a class must meet one of the following criteria:

>  (1) prosecuting separate actions by or against individual class members would create a risk of:

>>  (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

>>  (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

>  (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

> (3) the court finds that the questions of law or
> fact common to class members predominate over any
> questions affecting only individual members, and
> that a class action is superior to other available
> methods for fairly and efficiently adjudicating
> the controversy. . . .

Fed. R. Civ. P. 23(b).  Plaintiffs argue that the proposed class

meets the requirements of Rule 23(b)(3).  Rule 23(b)(3) presents

two additional requirements for certification: predominance and

superiority.  See Poulos, 379 F.3d at 664.

**DISCUSSION**

Before the Court can analyze the Rule 23 requirements,

the Court must address the threshold issue in this Motion:

whether the proposed class should include the Resort's managerial

personnel who also worked at banquets, functions, events, and

small parties, or provided room service.

**I.   Other Haw. Rev. Stat. § 481B-14 Cases**

Although § 481B-14 does not define the "employees" who

the statute protects, Plaintiffs urge the Court to follow the

lead of the parallel cases in state and federal court.

Plaintiffs point to the analysis of § 481B-14's legislative

history in Rodriquez, et al. v. Starwood Hotels & Resorts

Worldwide, Inc., CV 09-00016 DAE-BMK, Order: (1) Granting in Part

& Denying in Part Defendant's Motion to Dismiss; (2) Dismissing

Counts I & II of the Complaint Without Prejudice, filed

December 29, 2010 (dkt. no. 93) ("Rodriquez Dismissal Order"),

and in the Gurrobat Summary Judgement Order, as well as the

approval of settlements for classes of non-management employees

in <u>Apana, et al. v. Fairmont Hotels & Resorts (U.S.) Inc.</u>, CV 08-

00528 JMS-LK, and <u>Tuquero v. Maui Prince Hotel, LLC</u>, Civ. A. No.

08-1-0705(1).

**A.    <u>Analysis of Legislative History</u>**

In <u>Rodriquez</u>, Judge Ezra stated:

> As Defendant suggests, however, the statute
> does not make clear to which employees the service
> charge should be distributed.  To interpret
> ambiguous language in statutes, Hawai`i courts
> look to the context as well as the "reason and
> spirit of the law, and the cause which induced the
> legislature to enact it."  Haw. Rev. Stat. § 1-15.
> To this end courts may consider the legislative
> history of the statute.  <u>Coon v. City & County of
> Honolulu</u>, 47 P.3d 348, 360 (Haw. 2002).
> Applying these principles to the language of
> § 481B-14 it is clear that the Hawai`i Legislature
> intended for the statute to cover serving
> employees who would otherwise be tipped.
> According to the report of the House Committee on
> Labor & Public Employment, which was the first
> committee to consider the bill, it was originally
> intended "to protect employees who receive or may
> receive tips or gratuities."  H. Stand. Comm. Rep.
> No. 479-00, in 2000 House Journal, at 1155; <u>see
> also</u>, <u>Davis v. Four Seasons Hotel Ltd</u>, 228 P.3d
> 303, 313 (Haw. 2010).  The Senate Committee on
> Commerce & Consumer Protection described the
> scenario that § 481B-14 remedies, stating:

> > Your Committee finds that . . . moneys
> > collected as service charges are not always
> > distributed to the employees as gratuities
> > and are sometimes used to pay the employer's
> > administrative costs.  Therefore the *employee*
> > does not receive the money intended as
> > gratuity by the customer, and the customer is
> > misled into believing that the *employee* has
> > been rewarded *for providing good service*."

> S. Stand. Comm. Rep. No. 3077, in 2000 Senate

14

> Journal, at 1287 (emphasis added).  The
> legislature's focus on protecting employees who
> would otherwise be tipped clearly demonstrates
> that § 481B-14 was intended to provide protection
> for those specific employees.  Thus Defendant's
> argument that a minimum labor standard was not
> created because specific minimum protections are
> not explicitly created by § 481B-14 fails.

[<u>Rodriquez</u> Dismissal Order at 21-23 (alteration in <u>Rodriquez</u>).]

The legislative history that Judge Ezra cited in

<u>Rodriquez</u> is relevant to the issue whether the Court should limit

the class in the instant case to non-managerial food and beverage

service employees.  This Court, however, notes that the <u>Rodriquez</u>

analysis is not controlling because Judge Ezra did not examine

§ 481B-14 in the context of class certification.  The <u>Rodriquez</u>

Dismissal Order addressed the legislative history of § 481B-14 in

the context of the defendant's argument that the plaintiffs'

claims were "barred by <u>Machinists</u> preemption, which protects the

policies implicated by the structure of the [National Labor

Relations Act] by prohibiting states from regulating conduct that

Congress intended to be 'controlled by the free play of economic

forces.'"  [<u>Id.</u> at 15 (quoting <u>Lodge 76, Int'l Ass'n of</u>

<u>Machinists & Aerospace Workers, v. Wisconsin Employment Relations</u>

<u>Comm'n</u> (<u>Machinists</u>), 427 U.S. 132, 140 (1976)).]  Judge Ezra's

ultimate ruling on this issue, that <u>Machinists</u> preemption did not

apply because, *inter alia*, § 481B-14 creates a specific minimum

labor standard, does not necessarily require a finding that a

class action alleging violations of § 481B-14 must be limited to

service employees who receive tips or gratuities.

Plaintiffs also rely on <u>Gurrobat, et al. v. HTH Corp.,
et al.</u>, Civil No. 08-1-2528-12, State of Hawai`i First Circuit
Court.  It is true that the state court in <u>Gurrobat</u> granted the
plaintiffs' motion for class certification and it certified class
a class of:

> All past and present **non-management employees** of
> the Hotels who, on and after December 8, 2004, **who
> provided services in connection with the sales of
> food and/or beverage** at the Hotels for which a
> service charge or gratuity charge was (a) imposed
> by the Hotels and (b) not distributed 100% to said
> non-management employees.

[<u>Gurrobat</u> Certification Order at 3 (emphases added).]  The
<u>Gurrobat</u> Certification Order, however, does not include the state
court's analysis of the factors enumerated in Hawai`i Rule of
Civil Procedure 23,[9] and the order does not indicate whether the
<u>Gurrobat</u> defendants argued that the class should include
management employees.  The <u>Gurrobat</u> Certification Order therefore
has limited persuasive value in this Court's consideration of
Plaintiffs' Motion.

Plaintiffs also point out that, in <u>Gurrobat</u>, the state
court found that the legislative intent behind § 481B-14 and Haw.

---

[9] The requirements in Hawai`i Rule of Civil Procedure 23(a)
and (b) are substantively identical to the requirements in
Federal Rule of Civil Procedure 23(a) and (b).  The Hawai`i
Supreme Court recently amended Hawai`i Rule of Civil Procedure
23, but the amendment, which will take effect July 1, 2011, does
not affect sections (a) and (b).  <u>See</u> Order Amending Rule 23 of
the Hawai`i Rules of Civil Procedure (Jan. 27, 2011).

Rev. Stat. § 388-6 indicates that the legislature intended both statutes to protect service employees and not managerial employees. [Reply at 3, Exh. 2 (Gurrobat Summary Judgment Order & Gurrobat Hrg. Trans.).[10]] The state court reached this conclusion by reasoning that:

> The legislative history of HRS 481B-14 indicates it was intended to protect service workers and not managerial employees.
>
> Act 1 of Act 16 (sic) clearly states, "The legislature finds that Hawaii's hotel and restaurant employees may not be receiving tips or gratuities during the course of their employment from patrons because patrons believe their tips or gratuities are being included in the service charge and being passed on to the employees."
>
> "The purpose of the act was to require hotels and restaurants that apply a service charge for food and beverages, not distributed to employees as tip income, to advise customers that the service charge is being used to pay for costs or expenses other than wages and tips of employees."
>
> The Standing Committee Report No. 479 regarding House Bill 2123 indicates that the "Committee concluded that the problem lies with consumers who may not leave tips for service employees, mistakenly thinking that the service charges they paid were tips so they did not leave additional tips for the service employees."
>
> Accordingly, the Court finds the legislative history behind HRS 481B-14 demonstrates [the] legislature's intent to protect service employees who provide direct service to customers and not managerial employees.
>
> Additionally, because 481B-14 was originally drafted as an amendment to HRS 388-6, and is read

---

[10] The Gurrobat Summary Judgment Order contains no legal analysis. It grants the plaintiff and the certified class summary judgment on the issue of liability for the Chapter 388 claim for the reasons stated at the hearing on the motion, "which statement is adopted and incorporated herein by reference." [Gurrobat Summary Judgment Order at 2.]

in pari materia with 481B-14, the Court finds that
there is similar legislative intent behind 388-6,
in that it was intended to protect service
employees and not managerial employees.

[<u>Gurrobat</u> Hrg. Trans. at 14-15.]

As with <u>Rodriquez</u>, the state court's discussion of

§ 481B-14's legislative history is relevant to the issue whether

this Court should limit the class in the instant case to non-

managerial food and beverage service employees.  The <u>Gurrobat</u>

analysis, however, is not controlling because the state court did

not examine § 481B-14 and § 388-6 in the context of class

certification.  [<u>Gurrobat</u> Summary Judgment Order at 2 (granting

summary judgment in favor of the plaintiff on the Chapter 388

claim for reasons stated at the hearing); <u>Gurrobat</u> Hrg. Trans. at

15-16.]  Further, this Court disagrees with the state court's

assumption that, because the legislature drafted § 481B-14 as an

amendment to § 388-6, the legislative intent behind § 481B-14 can

be imputed to § 388-6.  In this Court's view, the fact that the

legislature originally drafted § 481B-14 as an amendment to §

388-6 but ultimately chose to incorporate the amendment into a

separate statue suggests that the legislature intentionally

separated the two statutes and purposely excluded the subject

matter in § 481B-14 from § 388-6.  <u>Cf.</u> <u>In re Water Use Permit</u>

<u>Applications</u>, 94 Hawai'i 97, 151, 9 P.3d 409, 463 (2000) (noting

general rule of statutory interpretation that "'[w]here [the

legislature] includes particular language in one section of a

statute but omits it in another section of the same Act, it is
generally presumed that [the legislature] acts intentionally and
purposely in the disparate inclusion or exclusion.'" (quoting
Gozlon-Peretz v. United States, 498 U.S. 395, 404, 111 S. Ct.
840, 112 L. Ed. 2d 919 (1991)) (some citations omitted)
(alterations in Water Use Permits)).  This Court therefore gives
the Gurrobat Summary Judgment Order limited persuasive value in
considering Plaintiffs' Motion.

    **B.**   **Approval of Settlements Involving Tipped Employees**

        In support of their argument that the Court should
limit the class to all non-managerial food and beverage service
employees, Plaintiffs also cite the Order Granting Final Approval
of Class Action Settlement, filed March 3, 2011 in Apana, et al.
v. Fairmont Hotels & Resorts (U.S.) Inc. [Apana, dkt. no. 97.]
In Apana, United States District Judge J. Michael Seabright
treated the action as a class action.  His order approving the
class action settlement, however, did not address the factors in
Fed. R. Civ. P. 23.  Judge Seabright also issued an Order: (1)
Preliminarily Approving Class Action Settlement Agreement, (2)
Approving Form of Notice, (3) Establishing Objection Deadline,
(4) Directing Dissemination of Notice, and (5) Scheduling "Final
Fairness Hearing" ("Preliminary Approval Order") on October 25,
2010, [Apana, dkt. no. 85,] but this order also did not address
the Rule 23 factors.  Further, the district judge's approval of

the Apana parties' **agreed upon** limitation of the class to food

and beverage service employees[11] does not necessarily require

this Court to accept Plaintiffs' argument that the class in the

instant case must exclude management personnel.

Similarly, Plaintiffs have not submitted supporting

evidence for their statement that the state court in Tuquero v.

Maui Prince Hotel, LLC, Civ. A. No. 08-1-0705(1), also certified

a class for settlement purposes that did not include management

employees.  This Court therefore cannot determine whether the

state court considered the factors enumerated in Hawai`i Rule of

Civil Procedure 23 and, if so, what persuasive value that

analysis should have, if any.  Even if the state court in Tuquero

considered the Rule 23 factors, as with Apana, the approval of

the parties' **agreed upon** exclusion of management employees from

the class does not necessarily compel this Court to certify the

class that Plaintiffs proposed in the Motion.

Thus, while the Court recognizes the general relevance

of these parallel cases concerning § 481B-14 and § 388-6, none of

them are directly on point as to the issues currently before the

---

[11] The Preliminary Approval Order adopted the parties'
definitions used in their settlement agreement.  [Apana, dkt. no.
85, at 3.]  The parties defined the class as follows: "All past
and present individuals who worked as banquet or room service
food and beverage service employees at the Fairmont Kea Lani
Hotel & Resort between November 24, 2004 and December 31, 2008."
[Apana, Stipulation Regarding Entry of Order . . ., filed
10/21/10 (dkt. no. 83), Exh. 1 (Settlement and Release Agreement)
at ¶ 1.]

Court in the instant Motion.  The Court will only consider those cases to the extent that their orders contain relevant discussion of §481B-14's legislative history.

The Court also notes that Judge Ezra recently ruled upon a motion for class certification in another case alleging claims similar to those in the instant case.  <u>Flynn v. Fairmont Hotels & Resorts, Inc.</u>, Cv. No. 10-00285 DAE-LEK, 2010 WL 5462475 (D. Hawai`i Dec. 29, 2010).  Judge Ezra, however, denied the plaintiffs' motion for class certification without prejudice on the ground that the plaintiffs did not have standing to seek the injunctive relief sought in their complaint, and therefore they could not represent a class seeking injunctive relief.  <u>Id.</u> at *2, *5.  In light of this ruling, Judge Ezra did not address whether the proposed class, which excluded the hotel's management employees, <u>id.</u> at *1, met the requirements of Fed. R. Civ. P. 23. <u>Id.</u> at *5 n.4.  The parties in <u>Flynn</u> subsequently reached a settlement and submitted various proposed orders and settlement documents to Judge Ezra.  [<u>Flynn</u>, Stip. Regarding Entry of Order, filed 4/27/11 (dkt. no. 81).]  Thus, <u>Flynn</u> does not provide any guidance on the issues currently before this Court.

## II.  <u>Similar Actions in Other Jurisdictions</u>

Plaintiffs also urge the Court to consider the fact that "the courts have regularly certified classes where groups of waitstaff or service employees have claimed that the employer

21

failed to distribute all service charges to the waitstaff or that certain categories of employees should not have participated in a gratuity pool." [Mem. in Supp. of Motion at 22 (citing Gurrobat Certification Order; Spicer v. Pier Sixty LLC, 269 F.R.D. 321 (S.D.N.Y. 2010); Benoit v. The Federalist, Inc., Civ. A. No. 04-3516 (Mass. Super. 2007); Calcagno, et al. v. High Country Investor, Inc., Civ. A. No. 03-0707 (Mass. Super. 2006); Moran, et al. v. Bay Tower, Inc., Civ. A. No. 97-6049A (Mass. Super. 2002)).]

## A.   **Massachusetts State Law**

Defendant notes that the majority of the cases that Plaintiffs cited are based on the Massachusetts Tips Law, Mass. Gen. L. c. 149 § 152A ("§ 152A"). Defendant argues that the Court should not consider these cases because § 152A is drastically different from Haw. Rev. Stat. § 481B-14. [Mem. in Opp. at 12-14.]

Defendant is correct that § 481B-14 and the current version of § 152A have significant differences. Haw. Rev. Stat. § 481B-14 states:

> Any hotel or restaurant that applies a service charge for the sale of food or beverage services shall distribute the service charge directly to its **employees** as tip income or clearly disclose to the purchaser of the services that the service charge is being used to pay for costs or expenses other than wages and tips of employees.

(Emphasis added.) Neither § 481B-14 or other related statutes

define "employees".

> In contrast, § 152A(d) states:

> If an employer or person submits a bill, invoice or charge to a patron or other person that imposes a service charge or tip, the total proceeds of that service charge or tip shall be remitted only to **the wait staff employees, service employees, or service bartenders** in proportion to the service provided by those employees.

> Nothing in this section shall prohibit an employer from imposing on a patron any house or administrative fee in addition to or instead of a service charge or tip, if the employer provides a designation or written description of that house or administrative fee, which informs the patron that the fee does not represent a tip or service charge for wait staff employees, service employees, or service bartenders.

(Emphasis added.)  Section 152A(a) also provides specific definitions of the three classes of employees who receive the service charge or tip:

> "Wait staff employee", a person, including a waiter, waitress, bus person, and counter staff, who: (1) serves beverages or prepared food directly to patrons, or who clears patrons' tables; (2) works in a restaurant, banquet facility, or other place where prepared food or beverages are served; and (3) who has no managerial responsibility.

> "Service employee", a person who works in an occupation in which employees customarily receive tips or gratuities, and who provides service directly to customers or consumers, but who works in an occupation other than in food or beverage service, and who has no managerial responsibility.

> "Service bartender", a person who prepares alcoholic or nonalcoholic beverages for patrons to be served by another employee, such as a wait staff employee.

In light of the clear statutory language in § 152A(d) limiting the distribution of service charges and tips to wait staff employees, service employees, and service bartenders, case law applying § 152A(d) is not relevant to the question of how this Court should interpret the general term "employees" in § 481B-14.

As Plaintiffs' counsel pointed out at the hearing on the Motion, however, the current version of § 152A(d) did not take effect until September 8, 2004. Prior to that date, § 152A read:

> No employer or other person shall solicit, demand, request or accept from any employee engaged in the serving of food or beverage any payment of any nature from tips or gratuities received by such employee during the course of his employment, or from wages earned by such employee or retain for himself any tips or gratuities given directly to the employer for the benefit of the employee, as a condition of employment; and no contract or agreement between an employer or other person and an employee providing for either of such payments shall afford any basis for the granting of legal or equitable relief by any court against a party to such contract or agreement. **If an employer or other person submits a bill or invoice indicating a service charge, the total proceeds of such charge shall be remitted to the employees in proportion to the service provided by them.** . . .

Mass. Gen. L. c. 149 § 152A (2003) ("pre-2004 § 152A"). The pre-2004 § 152A contains the same general term as § 481B-14 – "employees" – and therefore case law addressing class certification in cases asserting claims under the pre-2004 § 152A are persuasive in this Court's interpretation of § 481B-14.

Plaintiffs rely upon the following cases applying

§ 152A: <u>Moran, et al. v. Bay Tower, Inc.</u>, Civ. A. No. 97-6049A,

Memorandum of Decision and Order on Plaintiffs' Motion to Certify

Class Action (Mass. Super. Dec. 31, 2001[12]) ("<u>Moran</u> Certification

Order"); <u>Calcagno, et al. v. High Country Investor, Inc.</u>, Civ. A.

No. 03-0707C, Memorandum of Decision and Order on Plaintiffs'

Motion for Reconsideration of Class Certification Under Mass. R.

Civ. P. 23 (Mass. Super. June 8, 2006[13]) ("<u>Calcagno</u> Certification

Order"); <u>Benoit v. The Federalist, Inc.</u>, Civ. A. No. 04-03516,

Memorandum of Decision and Order on Plaintiff's Motion to Certify

a Class (Mass. Super. Nov. 5, 2007[14]) ("<u>Benoit</u> Certification

Order"); <u>Shea, et al. v. Weston Golf Club</u>, Civ. A. No. 2002-1826,

Order on Plaintiffs' Motion for Reconsideration of Class

Certification (Mass Super. Jan. 18, 2008[15]) ("<u>Shea</u> Certification

Order"); and <u>Black, et al. v. Cranwell Management Corp.</u>, Civ. A.

NO. 07-0122, Memorandum of Decision and Order on the Plaintiffs'

Motion for Class Certification (Mass Super. Feb. 24, 2010)

---

[12] Plaintiffs' copy of the <u>Moran</u> Certification Order does
not indicate its filing date, but the date following the court's
signature on the order is December 31, 2001.

[13] Plaintiffs' copy of the <u>Calcagno</u> Certification Order does
not indicate the filing date of the order, but the date following
the court's signature on the order is June 8, 2006.

[14] Plaintiffs' copy of the <u>Benoit</u> Certification Order does
not indicate its filing date, but the date following the court's
signature on the order is November 5, 2007.

[15] Plaintiffs' copy of the <u>Shea</u> Certification Order does not
indicate its filing date, but the date following the court's
signature on the order is January 18, 2008.

("<u>Black</u> Certification Order").[16]

　　　　<u>Black</u> apparently addressed both the pre-2004 § 152A and the current version of § 152A.  The class certification in <u>Black</u>, however, is not relevant to the issue before this Court because the <u>Black</u> plaintiffs' § 152A claims were apparently resolved prior to class certification.  [<u>Black</u> Certification Order, filed 2/24/10, at 2-3.[17]]  Thus, in granting the plaintiffs' motion to

---

[16] The Court notes that not all courts considering § 152A claims have granted class certification.  <u>See, e.g.</u>, <u>DiFiore v. American Airlines, Inc.</u>, 561 F. Supp. 2d 131, 132 (D. Mass. 2008) (noting prior denial of class action status); <u>Cooney v. Compass Group Foodservice</u>, 870 N.E.2d 668, 668 n.1 (Mass. Ct. App. 2007) (same).

[17] The court in <u>Black</u> stated:
　　　　The plaintiffs have brought statutory claims for relief under the Tips Act, G. L. c. 149, § 152A . . . .  In its decision on the parties' motion and cross-motion for summary judgment, this court ruled that the plaintiff Riccio-Major was entitled to summary judgment as to liability on the statutory claims.  The court granted summary judgment to the defendants on the statutory claims as to the remaining plaintiffs - Libardi, Marshall, and Black.
　　　　The plaintiffs advanced common law claims . . . .  In its decision on summary judgment, the court ruled that, to the extent that the claims for breach of contract and breach of good faith and fair dealing are duplicative of claims of violations of the Tips Act, the defendants were entitled to summary judgment on claims for services performed after the enactment of the Tips Act, i.e., from September 8, 2004, to the present.  The court granted summary judgment to the defendants on the claims of conversion, except with respect to spa services performed between April 23, 2004, and September 8, 2004, by plaintiffs Riccio-Major and Marshall.
　　　　　　　　　　　　(continued...)

26

certify "a class of all employees of Cranwell[18] who 'are or were Service Employees within the meaning of the Tip Act and provided Spa Services in connection with which Cranwell collected a service charge[,]'" [id. at 3,] the court was not required to address the issue whether the terms of the pre-2004 § 152A required the court to include managerial employees in the class.

It is not clear whether the certified classes in <u>Benoit</u> and <u>Shea</u> were governed by the pre-2004 § 152A or the current version of § 152A. Both orders granting class certification were filed long after the current version of § 152A took effect. [<u>Benoit</u> Certification Order, dated 11/5/07; <u>Shea</u> Certification Order, dated 1/18/08.] The complaint in <u>Shea</u>, however, was originally filed in 2002, and the complaint in <u>Benoit</u> was originally filed in 2004. Thus, it is possible that at least a portion of each certified class was governed by the pre-2004 § 152A. Nothing in the analysis in either certification order, however, suggests that the court granting certification had to consider whether management personnel should be included with the wait staff in the proposed classes. Although the certified classes in <u>Black</u>, <u>Benoit</u>, and <u>Shea</u> did not include management

---

[17](...continued)
[<u>Black</u> Certification Order at 2-3 (footnotes omitted).]

[18] Cranwell is a resort that provides various luxury services, including spa services. [<u>Black</u> Certification Order at 1-2.]

personnel, those certification orders are not persuasive in this Court's consideration of the proposed composition of the class in the instant case under § 481B-14.

Moran clearly addressed the pre-2004 § 152A because the court issued its order granting the plaintiffs' motion for class certification long before the current version of § 152A took effect. [Moran Certification Order, dated 12/31/01.] Calcagno also addressed the pre-2004 § 152A because the court certified "the class consisting of all function services (sic) of food and beverages, including bartenders, who serviced [Steak House and Marketplace ("Hilltop")] functions in the three (3) year period from March 9, 2000 through April 8, 2003[.]" [Calcagno Certification Order at 3.] These rulings are therefore persuasive in this Court's consideration of the proposed composition of the class under § 481B-14.

In Moran, the defendant asserted that, in order to recover under the § 152A claim, the putative class would have to establish whether supervisory personnel ever served, or assisted in serving, food and beverages at banquets. The defendant argued that, if supervisors participated in service, the putative class could not recover the serving supervisors' share of the service fees. [Moran Certification Order at 9.] The court in Moran found that this issue did not warrant denial of the plaintiffs' motion for class certification because the issue could be easily

resolved through testimony by supervisory employees or other evidence, such as the employee handbook. Further, the issue whether supervisors engaged in service did not predominate over other issues in the case. [Id. at 9-10.] The court in Moran ultimately granted the plaintiffs' motion to certify the class of function department waitstaff. [Id. at 1.]

The Calcagno Certification Order did not squarely address the issue of supervisory employees' competing claims to the disputed service fees. Nevertheless, it was clear that the putative class of servers claimed to be entitled to the entire service fee governed under the pre-2004 § 152, and therefore they also necessarily claimed that supervisory employees were not entitled to any portion of the service fee. [Calcagno Certification Order at 2 ("The principal issue in this case is whether the function servers at the Hilltop were entitled to receive the entire amount of service charges assessed for functions.").] The Calcagno court ultimately certified a class of food and beverages servers, including bartenders, who worked at Hilltop functions during a three-year period. [Id. at 3.]

B.    **Other Cases**

In addition to the Massachusetts state court cases involving § 152A claims, Plaintiffs cite Overka v. American Airlines, Inc., 265 F.R.D. 14 (D. Mass. 2010), and Spicer v. Pier Sixty LLC, 269 F.R.D. 321 (S.D.N.Y. 2010), in support of their

position that the Court should certify a class that is limited to non-managerial food and beverage service employees. <u>Overka</u>, however, involved only common law claims, 265 F.R.D. at 17, and therefore the class certification in <u>Overka</u> is not persuasive on the issue of the proper composition of a class of plaintiffs prosecuting a claim under Haw. Rev. Stat. § 481B-14.

<u>Spicer</u> involved claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, and the New York Labor Law ("NYLL") § 196-d. 269 F.R.D. at 328. The district court, *inter alia*, certified the class for purposes of the NYLL claim pursuant to Fed. R. Civ. P. 23. <u>Id.</u> at 339. Section 196-d states, in pertinent part:

> No employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee. This provision shall not apply to the checking of hats, coats or other apparel. Nothing in this subdivision shall be construed as affecting . . . **practices in connection with banquets and other special functions where a fixed percentage of the patron's bill is added for gratuities which are distributed to employees**, nor to the sharing of tips by a waiter with a busboy or similar employee.

(Emphasis added.) Thus, it appears that § 196-d does not address a significant portion of the proposed class in the instant case - food and beverage servers at banquets, functions, events, and small parties. In light of this apparent conflict, the Court

declines to consider <u>Spicer</u> in connection with the instant

Motion.  <u>But see</u> <u>Krebs v. Canyon Club, Inc.</u>, No. 10431/08, 2009

WL 440903, at *21 (N.Y. Sup. Ct. Jan. 2, 2009) (certifying a

class of "special event food servers, special event bartenders

and special event busers").[19]

Besides other cases in the jurisdictions previously

discussed, this Court did not find any other similar cases which

addressed the issue currently before this Court.  For example,

<u>Garcia v. Four Points Sheraton LAX</u> was brought as a class action

by hotel banquet captains and servers who alleged that the hotels

failed to pay them the entire amount of service charges, as

required by a Los Angeles ordinance.  115 Cal. Rptr. 3d 685, 691

(Ct. App. 2010).  The published decision, however, addressed the

lower court's decision sustaining demurrers without leave to

amend; there does not appear to be an available decision

addressing class certification during further proceedings after

the court of appeals reversed the decision sustaining the

demurrers.

**III.  <u>The Proposed Class in the Instant Case</u>**

Having considered the relevant analyses in the cases

discussed *supra*, this Court is persuaded that, under Haw. Rev.

---

[19] The facility involved in <u>Krebs</u> was "a private golf and
country club which is available to the general public as a site
for catered events, such as weddings, bar/bat mitzvahs and other
functions."  2009 WL 440903, at *1 (citation omitted).

Stat. § 481B-14, the putative class of employees alleging violations of § 481B-14 in the instant case should be limited to non-managerial food and beverage service employees. The Court has given particular weight to the discussion of § 481B-14's legislative history in the Rodriquez Dismissal Order and the Gurrobat Hearing Transcript. See *supra* Section I.A. Further, this Court agrees with the Massachusetts state court in Moran that, to extent that managerial personnel may have a competing claim to the service charges at issue in this case, 1) the parties can raise that issue by presenting evidence in this case, and 2) that issue does not predominate over the issues currently presented in Plaintiffs' Complaint such that certification of Plaintiffs' proposed class would be inappropriate. Thus, insofar as Defendant requests that, if the Court is inclined to grant class certification, the Court expand the class to include management personnel, Defendant's request is DENIED.

In addition, the Court's discussion regarding class certification as to the § 481B-14 claim also applies to Plaintiffs' other claims. Defendant acknowledges that all of Plaintiffs' claims are related to the alleged violation of § 481B-14. [Mem. in Opp. 2-3 & n.1.] The instant case is therefore distinguishable from Shea, in which the Massachusetts state court only granted certification as to the § 152A claim and denied certification as to the common law and other claims

32

because they had "no commonality" with the § 152A claim. [Shea Certification Order at 1.] Similarly, in Benoit, the Massachusetts state court only granted certification as to the § 152A claim and denied certification as to the common law claims. The court noted that the common law claims were primarily contract based, and the court found that those claims involved issues "unique to each individual employee." [Benoit Certification Order at 8.] In the present case, however, assuming that the proposed class satisfies the Fed. R. Civ. P. 23 requirements, there is no indication that there are any significant issues unique to individual class members which would preclude certification of the class as to the common law, or other statutory, claims, in addition to certification as to the § 481B-14 claim.

The Court now turns to the application of Rule 23 to Plaintiffs' proposed class of "all non-managerial food and beverage service employees who, [from July 30, 2004 to the present], have worked at banquets, functions, events, and small parties, or provided room service, where a service charge was imposed and where a part of that service charge was kept by the Defendant or management without adequate disclosure to customers." [Mem. in Supp. of Motion at 22-23 (footnotes omitted); Stip. to Class Period, filed 4/26/11 (dkt. no. 91), at 3.]

## A.   Rule 23(a) Requirements

### 1.   Numerosity

Plaintiffs state that they have worked at the Resort from the 1990's to the present.  [Mem. in Supp. of Motion, Exh. 10, Aff. of Mark Apana ("Apana Aff."), at ¶ 2; Exh. 11, Aff. of Bert Villon ("Villon Aff."), at ¶ 2.]  They estimate that, since 2005, the Resort had approximately fifty to sixty different banquet servers and ten bartenders.  [Apana Aff. at ¶ 3; Villon Aff. at ¶ 3.]  In addition, Plaintiffs' Amended Complaint alleges that "there are more than 100 putative class members[.]"  [Amended Complaint at ¶ 2.]

The United States Supreme Court has stated that "[t]he numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations."  Gen. Tel. Co. of the Nw., Inc. v. E.E.O.C., 446 U.S. 318, 330 (1980).  Further, the Ninth Circuit has recently noted that "[i]n general, courts find the numerosity requirement satisfied when a class includes at least 40 members."  Rannis v. Recchia, 380 Fed. Appx. 646, 651 (9th Cir. 2010) (citation omitted).  The Court therefore FINDS that the proposed class meets the numerosity requirement.

### 2.   Commonality

A proposed class meets the commonality requirement if the members' claims have a common question of law or fact.  See Armstrong v. Davis, 275 F.3d 849, 868 (9th Cir. 2001) (citation

omitted), <u>abrogated on other grounds, as noted in</u>, <u>Harris v.</u> <u>Alvarado</u>, 402 Fed. Appx. 180 (9th Cir. 2010). Rule 23(a)(2) does not require that these common issues be predominant in the action. <u>See</u> <u>Local Joint Exec. Bd. of Culinary/Bartender Trust</u> <u>Fund v. Las Vegas Sands, Inc.</u> ("<u>Las Vegas Sands</u>"), 244 F.3d 1152, 1162 (9th Cir. 2001) (quoting <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1022 (9th Cir. 1998) (comparing Rule 23(a)(2) with Rule 23(b)(3))).

In the present case, the proposed class members' claims have common questions of law and fact because all of their claims arise from the Resort's collection of service charges without the required disclosures to the customers. The Court therefore FINDS that the proposed class meets the commonality requirement.

### 3. **Typicality**

The commonality and typicality requirements tend to merge, but they are stated differently. <u>See</u> <u>Staton v. Boeing</u> <u>Co.</u>, 327 F.3d 938, 957 (9th Cir. 2003); <u>Armstrong</u>, 275 F.3d at 868. "[R]epresentative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical. Typicality 'does not mean that the claims of the class representative[s] must be identical or substantially identical to those of the absent class members.'" <u>Staton</u>, 327 F.3d at 957 (quoting 5 Herbert B. Newberg & Alba Conte, Newberg on Class Actions, § 24.25 at 24-105 (3d ed.

1992) (some citations and quotation marks omitted)).  The named
plaintiffs' claims are typical of the class members' claims if
they all arise from the same series of events and they all rely
on similar arguments to establish the defendant's liability.
Armstrong, 275 F.3d at 868.  The named plaintiffs' injuries do
not have to be identical to the injuries of the class members.
Id. at 869.

In the present case, the named Plaintiffs' claims and
the claims of the proposed class members all arise from the
Resort's alleged collection of service charges without the
required disclosures to the customers, and all the claims will
rely on similar arguments to establish Defendant's liability.
The Court recognizes that the named Plaintiffs both worked for
the Resort as banquet servers; there is no named Plaintiff who
worked for the Resort as a bartender.  [Apana Aff. at ¶ 2; Villon
Aff. at ¶ 2.]  This does not defeat typicality because the named
Plaintiffs' claims do not have to be identical to the claims of
all of the class members.  Further, the servers' and the
bartenders' claims arise from the same general fact pattern and
rely on the same legal theories.  The Court therefore FINDS that
the typicality requirement is satisfied.

### 4.    Adequacy of Representation

In determining whether the named plaintiffs will
adequately represent a proposed class, courts in the Ninth

36

Circuit consider two questions: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Staton, 327 F.3d at 957 (citations omitted); see also Las Vegas Sands, 244 F.3d at 1162 ("Adequate representation depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive." (citations and quotation marks omitted)). This requirement is satisfied as long as at least one named plaintiff adequately represents the class. See Las Vegas Sands, 244 F.3d at 1162 n.2.

For the reasons addressed in the discussion of the typicality requirement, and because the named Plaintiffs have diligently litigated this action thus far, the Court finds that the named Plaintiffs will adequately represent the proposed class. Further, Plaintiffs' counsel has extensive experience with these types of cases and counsel has no apparent conflict that would preclude them from representing the class. There is no question that counsel will adequately represent the proposed class. The Court therefore FINDS that the adequacy requirement is met.

**B. <u>Rule 23(b) Certification</u>**

Plaintiffs argue that the proposed class meets the requirements of Rule 23(b)(3). Rule 23(b)(3) presents two additional requirements for certification: predominance and superiority. Poulos v. Caesars World, Inc., 379 F.3d 654, 664 (9th Cir. 2004).

### 1. **Predominance**

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997) (citation omitted). Unlike Rule 23(a)(2), the predominance requirement does not look at the mere existence of common issues. The common issues must be "a significant aspect of the case and they can be resolved for all members of the class in a single adjudication[.]" Las Vegas Sands, 244 F.3d at 1162 (citation and block quote format omitted).

The significant factual issues in this case involve Defendant's policies and regular conduct: whether and when the Resort imposed service charges; who the Resort distributed those service charges to and in what proportion; and what disclosures the Resort made to customers about the service charges. These issues are common to the members of the proposed class; the conduct or circumstances of individual members will not be significant. Further, the key legal issues, primarily concerning

the application of § 481B-14, are also common to the members of the proposed class.  The Court can resolve these key factual and legal issues for all class members in one action.  The Court therefore FINDS that the predominance factor is satisfied.

**2.  <u>Superiority</u>**

Rule 23(b)(3) sets out a non-exhaustive list of factors that courts should consider in reviewing the superiority factor. <u>Las Vegas Sands</u>, 244 F.3d at 1163.  These factors are:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

First, in light of the common issues of fact and law in this case and the minor nature of any issues specific to the individual class members, the class members have a minimal interest in individually controlling the prosecution of this case.  Second, although there are several other similar cases pending in state and federal court and a number of the named plaintiffs in these cases overlap, the instant case is apparently the only pending case by servers and bartenders employed by

39

Defendant at the Resort.

Third, maintaining Plaintiffs' claims in a class action is desirable because it is unlikely that individual Resort servers and bartenders would be able to retain counsel and litigate separate actions in light of the relatively small amounts allegedly due to each person from the service charges. See, e.g., Moran Certification Order at 5 ("It would be fruitless for these types of employees, who at most worked at only a few functions, to pursue their claims individually since the amount of tips and gratuities allegedly owed them would be greatly exceeded by the cost of litigating the matter.").

Fourth, there does not appear to be any issues that would create undo difficulties in managing the instant case as a class action. The class members should be readily identifiable from Defendant's personnel records, which are also likely to include a last known address for class members who are no longer employed by the Resort.

The Court has not identified any other factors relevant to the superiority inquiry. Insofar as all the applicable factors weigh in favor of class certification, the Court FINDS that the superiority requirement is satisfied.

**C.** **Summary of Rule 23 Requirements**

The Court FINDS that the proposed class meets all of applicable requirements of Fed. R. Civ. P. 23. The Court

therefore FINDS that class certification is appropriate and GRANTS Plaintiffs' Motion.

## CONCLUSION

On the basis of the foregoing, Plaintiffs' Motion for Class Certification, filed February 18, 2011, is HEREBY GRANTED. The Court HEREBY ORDERS as follows:

1)   the Court CERTIFIES the instant case as a class action;

2)   the Court CERTIFIES the following Class: all non-managerial food and beverage service employees who, from July 30, 2004 to the present, have worked at banquets, functions, events, and small parties, or provided room service, where a service charge was imposed and where a part of that service charge was kept by the Defendant or management without adequate disclosure to customers;

3)   the Court APPOINTS Bert Villon and Mark Apana as the Class Representatives;

4)   the Court APPOINTS Ashley Ikeda, Esq., Lori Aquino, Esq., David Rosenfeld, Esq., Harold Lichten, Esq., Shannon Liss-Riordan, Esq., and Hillary Schwab, Esq., as Class Counsel; and

5)   the Court ORDERS the parties to meet and confer by June 21, 2010 to agree on: the proposed notice to potential class members pursuant to Fed. R. Civ. P. 23(d)(2); a method for ascertaining the identity of class members; the most practicable

procedure under the circumstances to provide notice of the instant case to those class members. The proposed notice to the Class and the proposed distribution plan shall be submitted for the Court's approval by July 12, 2011.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, May 31, 2011.



/S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**BERT VILLON AND MARK APANA V. MARRIOTT HOTEL SERVICES, INC., ETC; CIVIL NO. 08-00529 LEK-RLP; ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**