IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

BERT VILLON and MARK APANA,      )      CIVIL NO. 08-00529 LEK-RLP
                                 )
          Plaintiffs,            )
                                 )
     vs.                         )
                                 )
MARRIOTT HOTEL SERVICES,         )
INC., DBA WAILEA MARRIOTT        )
RESORT,                          )
                                 )
          Defendant.             )
_____  )

**ORDER ADMINISTRATIVELY TERMINATING, WITHOUT PREJUDICE,
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
DEFENDANT'S MOTION TO DISMISS AMENDED
CLASS ACTION COMPLAINT FILED JUNE 28, 2010 [DOC #60]**

        Before the Court are: the Motion for Partial Summary
Judgment ("Plaintiffs' Motion") filed by Plaintiffs Bert Villon
and Mark Apana, on behalf of themselves and all others similarly
situated (collectively "Plaintiffs") on April 29, 2011; and the
Motion to Dismiss Amended Class Action Complaint Filed
June 28, 2010 [Doc #60] ("Defendant's Motion") filed by Defendant
Marriott Hotel Services, Inc., doing business as Wailea Marriott
Resort ("Defendant") on May 18, 2011.  These matters came on for
hearing on July 11, 2011.  Appearing on behalf of Plaintiffs were
Harold Lichten, Esq., Lori Aquino, Esq., and, by telephone,
Shannon Liss-Riordan, Esq.  Appearing on behalf of Defendant was
Richard Rand, Esq.  After careful consideration of the motions,
supporting and opposing memoranda, and the arguments of counsel,
the Court HEREBY ADMINISTRATIVELY TERMINATES, WITHOUT PREJUDICE,

Plaintiffs' Motion and Defendant's Motion because this Court will
certify the central question in this case to the Hawai`i Supreme
Court.

## BACKGROUND

Plaintiffs have each worked, within the period from
July 30, 2004 to the present, as food and beverage servers for
the Wailea Marriott Resort ("the Resort"),[1] which is owned and/or
operated by Defendant.  Plaintiffs filed their Class Action
Complaint ("Complaint") on November 24, 2008.  The Complaint
alleged that the Resort imposes a service charge on the sale of
food and beverages at its banquets and other events, but the
Resort does not distribute the total proceeds of these service
charges to its food and beverage servers.  Further, the Resort
does not disclose this fact to its customers.  Plaintiffs argue
that this is a violation of Haw. Rev. Stat. § 481B-14, and is
actionable under § 481B-4 and Haw. Rev. Stat. §§ 480-2 and

---

[1] This Court issued its Order Granting Plaintiffs' Motion
for Class Certification on May 31, 2011.  [Dkt. no. 105.]  The
Court defined the certified class as follows:

> all non-managerial food and beverage service
> employees who, from July 30, 2004 to the present,
> have worked at banquets, functions, events, and
> small parties, or provided room service, where a
> service charge was imposed and where a part of
> that service charge was kept by the Defendant or
> management without adequate disclosure to
> customers[.]

[Id. at 41.]

480-13, as well as under state wage statutes, Haw. Rev. Stat.

§§ 388-6, 388-10, and 388-11, and Hawai`i common law.

## I.    **Procedural Background**

On June 2, 2009, in a related case, <u>Davis, et al. v.</u>
<u>Four Seasons Hotel Ltd., et al.</u>, CV 08-00525 HG-LEK, then Chief
United States District Judge Helen Gillmor certified the
following question to the Hawai`i Supreme Court:

> Where plaintiff banquet server employees allege
> that their employer violated the notice provisions
> of H.R.S. § 481B-14 by not clearly disclosing to
> purchasers that a portion of a service charge was
> used to pay expenses other than wages and tips of
> employees, and where the plaintiff banquet server
> employees do not plead the existence of
> competition or an effect thereon, do the plaintiff
> banquet server employees have standing under
> H.R.S. § 480-2(e) to bring a claim for damages
> against their employer?

[<u>Davis</u>, Certified Question to the Hawaii Supreme Court from the
United States Dist. Ct. for the Dist. of Hawaii in Civil No.
08-00525 HG-LEK, filed 6/2/09 (dkt. no. 75), at 6.]

The certified question was also applicable to the
instant case and, therefore, the late Senior United States
District Judge Samuel P. King issued an order staying the instant
case pending a decision by the Hawaii`i Supreme Court answering
the certified question in <u>Davis</u>.  [Minute Order, filed 7/17/09
(dkt. no. 43).]

The Hawai`i Supreme Court issued its opinion on
March 29, 2010.  It answered the certified question as follows:

3

"Employees are 'any persons' within the meaning of HRS §§ 480-1 and 480-2(e) and are within the category of plaintiffs who have standing to bring a claim under HRS § 480-2(e) for a violation of HRS § 481B-14." Davis v. Four Seasons Hotel Ltd., 122 Hawai`i 423, 446, 228 P.3d 303, 326 (2010) ("Davis Opinion"). The supreme court, however, also held that, "based on the allegations contained in Employees' Amended Complaint, Employees have not sufficiently alleged the 'nature of the competition' to bring a claim for damages against Four Seasons under HRS §§ 480-2(e) and 480-13(a) for a violation of HRS § 481B-14." Id., 228 P.3d at 326.

On June 22, 2010, this Court issued an order granting Plaintiffs' motion to lift the stay and Plaintiffs' motion to amend their Complaint. [Dkt. no. 58.] Plaintiffs filed their Amended Class Action Complaint ("Amended Complaint") on June 28, 2010. [Dkt. no. 60.]

The Amended Complaint alleges that the Resort charges a preset service charge to customers' bills for food and beverages provided at Resort "banquets, events, meetings and in other instances[.]" [Id. at ¶ 6.] The Resort allegedly has a policy and practice of either retaining a portion of the service charge for itself or using that portion to pay managers and other non-tipped employees. The Amended Complaint alleges the following claims: Count I - violation of Hawai`i Revised Statutes

4

§§ 481B-14, 481B-4, and 480-2; Count II - intentional interference with contractual and/or advantageous relations; Count III - breach of implied contract; Count IV - unjust enrichment; Count V - violation of Hawai`i Revised Statutes §§ 388-6, 388-10, and 388-11.

## II.  **Plaintiffs' Motion and Defendant's Motion**

Only the parties' arguments regarding Count V ("unpaid wages claim"), are relevant for purposes of the instant Order. Plaintiffs' Motion exclusively addresses Count V, but Defendant's Motion addresses all of the claims in the Amended Complaint.  The Court will only address the parties' respective positions on the issues related to Count V.

On April 29, 2011, Plaintiffs filed Plaintiffs' Motion, [dkt. no. 92,] their memorandum in support thereof, [dkt. no. 94,] and their concise statement of facts ("Plaintiffs' CSOF") [dkt. no. 93].  On June 20, 2011, Defendant filed its memorandum in opposition to Plaintiffs' Motion ("Defendant's Memorandum in Opposition"), [dkt. no. 108,] and its response to Plaintiffs' CSOF [dkt. no. 107].  Plaintiffs filed their reply in support of Plaintiffs' Motion ("Plaintiffs' Reply") on June 27, 2011.  [Dkt. no. 110.]  On August 31, 2011, Plaintiffs filed a Notice of Supplemental Authority.  [Dkt. no. 124.]

The arguments in Defendant's Motion, [dkt. no. 103], and Plaintiffs' opposition to Defendant's Motion ("Plaintiffs'

Memorandum in Opposition"), [filed 6/20/11 (dkt. no. 106),]
primarily reiterate the arguments they raised in conjunction with
Plaintiffs' Motion.  Defendant filed its reply in support of
Defendant's Motion ("Defendant's Reply") on June 27, 2011.  [Dkt.
no. 111.]

A.    **Plaintiffs' Position**

Plaintiffs seek summary judgment as to Count V because
"Defendant withheld wages in violation of H.R.S. § 388-6 when it
failed to distribute the entirety of service charges collected
from customers to food and beverage servers and failed to clearly
disclose this fact to customers as required by H.R.S. § 481B-14."
[Pltfs.' Motion at 2.]

Plaintiffs allege that, although the Resort distributes
a portion of its service charges to its food and beverage service
employees (also "Plaintiffs"), the Resort retains a substantial
portion of the service charge for itself.  [Mem. in Supp. of
Pltfs.' Motion at 4 (citing Pltfs.' CSOF at ¶¶ 2-3).]  Plaintiffs
also allege that, prior to the filing of this action, the Resort
did not make the required disclosure that it was not paying the
entire amount of the service charge to Plaintiffs.  [Id. at 4-5
(citing Pltfs.' CSOF at ¶¶ 5-8).]  The Resort was therefore
required under § 481B-14 to distribute the entire amount of the
service charges to Plaintiffs as tip income.

Plaintiffs assert that a violation of Haw. Rev. Stat. § 481B-14 is actionable under Haw. Rev. Stat. § 388-6, which prohibits employers from withholding wages from employees, because, pursuant to Haw. Rev. Stat. § 388-1, wages include tips and gratuities for purposes of § 388-6. Plaintiffs therefore argue that the tip income defined in § 481B-14 constitutes wages under Chapter 388 and, where the employer fails to pay this tip income, the employees may recover the unpaid tip income pursuant to § 388-6. [<u>Id.</u> at 6-8.]

Plaintiffs assert that a food and beverage service employee's claim for unpaid wages based on a violation of § 481B-14 is "well recognized." [<u>Id.</u> at 8-9 (citing <u>Four Seasons</u> Order at 38; <u>Grand Wailea</u> Order at 29; <u>Starwood</u> Order at 34-35).[2]] In addition, on August 26, 2011, Judge Gillmor issued an order granting summary judgment on the unpaid wages claim to

---

[2] Plaintiffs' citation to the "<u>Four Seasons</u> Order" refers to: <u>Davis, et al. v. Four Seasons Hotel Ltd., et al.</u>, CV 08-00525 HG-BMK, Order Granting in Part and Denying in Part Defendants' Renewed Motion to Dismiss Plaintiffs' Complaint (Doc. 94), filed 9/30/10 (dkt. no. 125) ("<u>Davis</u> Dismissal Order"), which is also available at 2010 WL 3946428. Plaintiffs' citation to the "<u>Grand Wailea</u> Order" refers to: <u>Wadsworth, et al. v. KSL Grand Wailea Resort, Inc., et al.</u>, CV 08-00527 ACK-LEK, Order Granting in Part and Denying in Part Defendants' Motion to Dismiss, filed 12/10/10 (dkt. no. 118) ("<u>Wadsworth</u> Dismissal Order"), which is also available at 2010 WL 5146521. Plaintiffs' citation to the "<u>Starwood</u> Order" refers to: <u>Rodriguez, et al. v. Starwood Hotels & Resorts Worldwide, Inc.</u>, CV 09-00016 DAE-BMK, Order: (1) Granting in Part and Denying in Part Defendant's Motion to Dismiss; (2) Dismissing Counts I and II of the Complaint Without Prejudice, filed 12/29/10 (dkt. no. 93) ("<u>Rodriguez</u> Dismissal Order").

the plaintiffs in <u>Davis v. Four Seasons</u>, CV 08-00525 HG-BMK (dkt. no. 171),[3] ("<u>Davis</u> Summary Judgment Order"). [Pltfs.' Notice of Suppl. Authority, filed 8/31/11 (dkt. no. 124).]

Plaintiffs also note that a state court has granted summary judgment on a claim that is nearly identical to Plaintiffs' unpaid wages claim. In <u>Gurrobat v. HTH Corp., et al.</u>, Civil No. 08-1-2528-12 (KKS), the State of Hawai`i First Circuit Court ("the state court") ruled that, because the employer failed to make the required disclosure when retaining a portion of the service charge, the employer was required to pay the entire service charge to its service employees as tip income, and the failure to make that payment violated § 388-6. [Mem. in Supp. of Pltfs.' Motion at 10 (citing <u>Gurrobat</u> transcript at 12-13, 16).[4]] Plaintiffs contend that all four of these decisions adopted a "harmonious reading of § 481B-14 and § 388-6" which is consistent with § 481B-14's legislative history. [<u>Id.</u> (citation omitted).]

---

[3] The <u>Davis</u> Summary Judgment Order is also available at 2011 WL 3841075.

[4] Plaintiffs' citation to the <u>Gurrobat</u> transcript refers to the excerpts of the transcript of the state court's November 17, 2010 hearing on, *inter alia*, the <u>Gurrobat</u> plaintiff's Motion for Partial Summary Judgment as to Defendant's Violation of HRS Chapter 388 ("<u>Gurrobat</u> Transcript"). The <u>Gurrobat</u> Transcript and the state court's order granting that motion, which incorporates the analysis set forth during the hearing, are attached to the Memorandum in Support of Plaintiffs' Motion as Exhibit 4.

Defendant's position relies primarily upon the legislative history of § 481B-14, but Plaintiffs argue that this Court should not consider the legislative history because the language of § 481B-14 and § 388-6 is unambiguous. Plaintiffs contend that all of the courts to address the issue have recognized that the language of those statutes is plain and unambiguous. [Pltfs.' Reply at 4-6 (some citations omitted) (citing <u>Davis</u> Dismissal Order, 2010 WL 3946428, at *15; <u>Rodriquez</u> Dismissal Order at 54-55).] Even if the Court considers the legislative history of § 481B-14, Plaintiffs argue that it supports their reading of the statute. They note that the title of House Bill 2123 ("H.B. 2123"), the 2000 bill that resulted in the enactment of § 481B-14, was always "RELATING TO WAGES AND TIPS OF EMPLOYEES." [<u>Id.</u> at 9 (quoting 2000 Haw. Sess. Laws Act 16, at 21).] Plaintiffs contend that this alone contradicts Defendant's argument that § 481B-14 and § 388-6 should not be read *in pari materia*. [<u>Id.</u>] Further, prohibiting employees from enforcing § 481B-14 through § 388-6 would render superfluous the amendment in the final version of the bill - included after the bill's revision to address Haw. Rev. Stat. Chapter 481B instead of Haw. Rev. Stat. Chapters 387 and 388 - stating that, where a payment is made because of a lack of disclosure, the payment is "tip income". [<u>Id.</u> at 10-11 (citations omitted).] Plaintiffs also emphasize that, in enacting § 481B-14, the Twentieth

Legislature, 2000, State of Hawai`i ("the Legislature"), could have made it an exclusive remedy, but the Legislature chose not to do so. [Id. at 11 (citing Gurrobat Trans. at 12-13).] Further, they assert that nothing in the Hawai`i Supreme Court's discussion in the Davis Opinion about § 481B-14's legislative history contradicts Plaintiffs' position, in spite of the substantive changes between Act 16 and the original H.B. 2123. [Id. at 11-12.] In fact, the Hawai`i Supreme Court in the Davis Opinion noted that, in H.B. 2123, the Legislature was concerned with the negative impact on both employees and consumers. [Id. at 12 (quoting Davis, 228 P.3d at 314).]

**B.    Defendant's Position**

Defendant's position is that Plaintiffs' claim under § 388-6 fails because §§ 480-2 and 480-13 are the exclusive remedies for violations of § 481B-14. [Def.'s Mem. in Opp. at 2.] Defendant argues that the legislative history of § 481B-14 does not support Plaintiffs' position that they can enforce § 481B-14 through § 388-6. Defendant includes a detailed discussion of § 481B-14's legislative history, emphasizing that H.B. 2123[5] originally proposed amendments to Chapters 387 and 388. Defendant argues that Plaintiffs' reliance on the title of H.B. 2123 is misplaced. According to legislative drafting rules,

---

[5] H.B. 2123 is attached to Defendants' Memorandum in Opposition as Exhibit A to the Declaration of Richard M. Rand ("Rand Opposition Declaration").

a bill has one title and it should not be amended. Thus, there is no significance to the fact that the title of H.B. 2123 remained the same after the bill's amendment. [Def.'s Reply at 3-4 (citing Hawaii Legislative Drafting Manual).[6]]

Defendant also contends that Plaintiffs' reliance on the Legislature's failure to identify §§ 480-2 and 480-13 as the exclusive enforcement mechanism for § 481B-14 is similarly misplaced. It should be assumed that, by placing the new provision in Chapter 481B, the Legislature knew that the provision would be enforced in the same manner as other consumer protection provisions. Defendant emphasizes that the other provisions of Chapters 480 and 481B do not contain an exclusivity clause. In Defendant's view, Plaintiffs' position assumes that the Legislature believed that, because § 481B-14 uses the term "tip income", courts would allow plaintiffs to enforce it through § 388-6, even though the Legislature expressly chose not to amend § 388-6. This assumption is unsound because § 481B-14 uses the new term "tip income" instead of the term used in § 388-1, "tips". Defendant argues that the use of another term indicates that the Legislature intended that the service charges would not be considered "tips" when employers distributed them to servers. [Id. at 7.]

---

[6] The drafting manual is attached to Defendant's Reply as Exhibit A to the Declaration of Richard M. Rand ("Rand Reply Declaration").

11

Defendant also argues that, although the Hawai`i
Supreme Court's decision in <u>Davis</u> did not decide whether
employees can bring a § 388-6 action to enforce § 481B-14, the
opinion "gives significant insight" into how the supreme court
would decide the issue. [Def.'s Mem. in Opp. at 11.] Defendant
argues that nothing in the <u>Davis</u> Opinion indicates that the
supreme court believed that, in enacting § 481B-14, the
Legislature was authorizing a § 388-6 cause of action based on an
alleged violation of § 481B-14. [<u>Id.</u> at 14.]

Defendant therefore urges the Court to reject
Plaintiffs' attempt to use a law addressing the payment of wages
to enforce a consumer protection law. Defendant argues that no
judge in this district has embraced Plaintiffs' position, and the
only court to do so - the state court in <u>Gurrobat</u> - rendered its
decision based on a misreading of the legislative history and
intent. [<u>Id.</u> at 14-15.[7]] Defendant also urges the Court to
disregard <u>Gurrobat</u> because, since "the Hawaii Supreme Court in
<u>Davis</u> did not decide the question, it is highly unusual for a
state court circuit judge to then decide the question in the
affirmative." [<u>Id.</u> at 15.]

Defendant acknowledges that statutory construction
starts with the examination of the plain meaning of the statute.

_____

[7] Defendant filed its Memorandum in Opposition prior to
Judge Gillmor's oral ruling on the plaintiffs' motion for partial
summary judgment on the unpaid wages claim in <u>Davis</u>.

[Id.] Defendant, however, argues that Plaintiffs cannot ignore the fact that the Legislature rejected proposed amendments to Chapter 388 that would have expressly defined "tips" to include compulsory service charges. [Id. at 16.]

Defendant argues that nothing in § 481B-14's legislative history suggests that the Legislature intended to allow employees to avoid the requirements for Chapter 480 actions by filing a § 388-6 action. Defendant characterizes Plaintiffs' Motion as "an attempt to end run Davis," [id. at 18,] based on Plaintiffs' improper assumption that "they need not prove their underlying claim under H.R.S. § 481B-14 in order to assert a claim under H.R.S. § 388-6." [Id. at 17.] Defendant emphasizes that proof of an employer's failure to make the proper disclosure alone does not prove a §§ 480-2 and 480-13 claim based on § 481B-14, and Defendant argues that an insufficient § 481B-14 claim should not be sufficient to establish a claim under a different statute. Further, the Court is not required to read § 481B-14 and § 388-6 together because they address two unrelated and distinct areas of the law. [Id. at 22-23.]

Defendant contends that prior rulings in this district that similar unpaid wages claims survive a motion to dismiss do not constitute rulings that Plaintiffs can use § 388-6 to enforce § 481B-14 if there is no underlying violation of § 481B-14. [Id. at 23-24.] None of the judges ruling on motions to dismiss in

13

those cases either discussed the legislative history of § 481B-14
or noted that the Hawai`i Supreme Court reserved ruling on this
issue in the Davis Opinion. [Id. at 25.] Defendant acknowledges
Judge Gillmor's summary judgment ruling in Davis, but
nevertheless argues that the correct ruling is that Plaintiffs'
unpaid wages claim fails. [Def.'s Reply at 3 n.1 (discussing
Judge Gillmor's oral ruling at the June 21, 2011 hearing).[8]]

Finally, Defendant argues that the Gurrobat court's
recognition of an employee's unpaid wages claim based on a
violation of § 481B-14 is not persuasive because the ruling in
Gurrobat is premised upon an inaccurate reading of the
legislative intent behind § 481B-14. Defendant contends that
Gurrobat conflicts with State v. Mata, 71 Haw. 319, 330, 789 P.2d
1122, 1128 (1990), and ignores the requirement in the Davis
Opinion that employees who proceed under § 481B-14 have to prove
an unfair methods of competition claim. [Def.'s Mem. in Opp. at
26-27.] Defendant argues that creating the unpaid wages claim
which Plaintiffs present in the instant case would be unnecessary
and unwise. Defendant asserts that, if this Court has any
concerns about whether this claim does or should exist under
Hawai`i law, this Court should certify the question, which the

_____

[8] Judge Gillmor issued the Davis Summary Judgment Order
after the filing of Defendant's Reply.

Hawai`i Supreme Court expressly reserved ruling on in the Davis Opinion. [Id. at 28.]

**STANDARD**

"This court may certify a question to the Hawaii Supreme Court when it concerns 'law of Hawaii that is determinative of the cause and . . . there is no clear controlling precedent in the Hawaii judicial decisions . . . .'" Saiki v. LaSalle Bank Nat'l Ass'n as Tr. for Structured Asset Inv. Loan Trust Series 2003-BC2, Civil No. 10-00085 JMS/LEK, 2011 WL 601139, at *6 (D. Hawai`i Feb. 10, 2011) (quoting Haw. R. App. P. 13(a)). The court, however, should not certify questions when the answer is reasonably clear and the court can, using its best judgment, predict how the Hawai`i Supreme Court would decide the issue. See id. (citing Helfand v. Gerson, 105 F.3d 530, 537 (9th Cir. 1997); Pai`Ohana v. United States, 875 F. Supp. 680, 700 (D. Haw. 1995)).

In prior cases where this district court has certified questions to the Hawai`i Supreme Court, the court has noted that: 1) there was no Hawai`i law interpreting the Hawai`i statute at issue; 2) there was no uniformity among decisions of other states interpreting similar statutes; and 3) it was prudent to allow the Hawai`i Supreme Court to address the significant issue of first impression. See, e.g., BlueEarth Biofuels, LLC v. Hawaiian Elec. Co., et al., Civ. No. 09-00181 DAE-KSC, Certified Questions to

15

the Hawaii Supreme Court, filed 11/2/09 (dkt. no. 191), at 11-12

(citing Smith v. Cutter Biological, Inc., 911 F.2d 374, 375 (9th

Cir. 1990) ("We do not think it is appropriate to substitute our

judgment on the interpretation of a Hawaii statute for the

judgment of the Hawaii Supreme Court.")).

## DISCUSSION

Count V of the Amended Complaint, the unpaid wages

claim, is based on the alleged violation of Haw. Rev. Stat.

§ 481B-14, which states:

> Any hotel or restaurant that applies a service
> charge for the sale of food or beverage services
> shall distribute the service charge directly to
> its employees as tip income or clearly disclose to
> the purchaser of the services that the service
> charge is being used to pay for costs or expenses
> other than wages and tips of employees.

Plaintiffs allege that the Resort did not clearly disclose to its

customers that it was withholding some of the food and beverage

service charges from the food and beverage servers.  The Resort

was therefore required to distribute the entire amount of the

service charges collected to the food and beverage servers as tip

income.  Plaintiffs contend that, as a result of the Resort's

failure to do so, they "have been deprived of income which

constitutes wages, which is actionable under Hawaii Revised

Statutes Section 388-6, 10, and 11." [Amended Complaint at pgs.

9-10.]

Haw. Rev. Stat. § 388-6, entitled "Withholding of wages", states, in pertinent part: "No employer may deduct, retain, or otherwise require to be paid, any part or portion of any compensation earned by any employee except where required by federal or state statute or by court process or when such deductions or retentions are authorized in writing by the employee . . . ."

Haw. Rev. Stat. § 388-10(a) states, in pertinent part: "Any employer who fails to pay wages in accordance with this chapter without equitable justification shall be liable to the employee, in addition to the wages legally proven to be due, for a sum equal to the amount of unpaid wages and interest . . . ." Haw. Rev. Stat. § 388-11 further enumerates the remedies available to the employee.

Plaintiffs contend that the Resort's violation of § 481B-14 is actionable under §§ 388-6, 388-10, and 388-11 because § 481B-14 requires that, where the Resort must distribute service charges as tip income, the service charges constitute wages for purposes of Chapter 388. Haw. Rev. Stat. § 388-1 expressly states "for the purposes of section 388-6, 'wages' shall include tips or gratuities of any kind." Defendant contends that it is clear from the legislative history of § 481B-14 that Plaintiffs' unpaid wages claim fails as a matter of law. Plaintiffs respond that it is unnecessary to look at the

legislative history of § 481B-14 because courts only resort to legislative history to resolve ambiguities in a statute's plain language, and the relevant statutes in the instant case are unambiguous.  Plaintiffs urge the Court to follow the lead of the other judges in this district and the state court in <u>Gurrobat</u> and find that the statutes at issue are unambiguous and that Plaintiffs have an actionable unpaid wages claim.  <u>See, e.g.</u>, <u>Davis</u> Summary Judgment Order, 2011 WL 3841075, at *7 ("Sections 388-6 and 481B-14 are not ambiguous.  The meaning of these statutes, when read in conjunction in accordance with H.R.S. § 1-16, is quite clear.  As the District Judge stated in [the <u>Rodriquez</u> Dismissal Order at 55], 'Based on the plain language of the statutes, Plaintiffs' allegations suffice to state a cause of action under § 388-6.'").

I.  **Applicable Law**

This district court has diversity jurisdiction over the instant case pursuant to the Class Action Fairness Act.  [Amended Complaint at ¶ 2 (citing 28 U.S.C. § 1332(d)(2)).]  The Ninth Circuit has recognized that:

> In determining the law of the state for purposes of diversity, a federal court is bound by the decisions of the highest state court.  <u>Harvey's Wagon Wheel, Inc. v. Van Blitter</u>, 959 F.2d 153, 154 (9th Cir. 1992).  If the state's highest court has not decided an issue, it is the responsibility of the federal courts sitting in diversity to predict "how the state high court would resolve it."  <u>Air-Sea Forwarders, Inc. v. Air Asia Co., Ltd.</u>, 880 F.2d 176, 186 (9th Cir. 1989) (internal

quotation marks omitted).  There are times,
however, when diversity cases in federal courts
"'present significant issues . . . with important
public policy ramifications.'"  <u>Munson v. Del
Taco, Inc.</u>, 522 F.3d 997, 1003 (9th Cir. 2008)
(quoting <u>Kremen v. Cohen</u>, 325 F.3d 1035, 1037 (9th
Cir. 2003)).  In such circumstances, it may be
appropriate, when permitted under state law, to
certify those questions to the state court as a
matter of "'deference to the state court on
significant state law matters.'"  <u>Id.</u> (quoting
<u>Kremen</u>, 325 F.3d at 1037).

<u>Albano v. Shea Homes Ltd. P'ship</u>, 634 F.3d 524, 530 (9th Cir.

2011) (alteration in <u>Albano</u>).

The only Hawai`i Supreme Court case addressing

§ 481B-14 is the <u>Davis</u> Opinion.  The <u>Davis</u> Opinion did not

address the issue whether § 481B-14 is enforceable through

§§ 388-6, 388-10, and 388-11.  122 Hawai`i 423, 428 n.12, 228

P.3d 303, 308 n.12 ("Employees also contend that Employees can

enforce HRS § 481B-14 through HRS §§§ 388-6, 10 and 11.  However,

this argument will not be addressed because it is beyond the

scope of the certified question.").  Insofar as there is no

Hawai`i Supreme Court case law addressing this issue, this Court

must determine if it can predict how the Hawai`i Supreme Court

would resolve this issue.

The Hawai`i Supreme Court follows these rules of

statutory interpretation:

> First, the fundamental starting point for
> statutory interpretation is the language of
> the statute itself.  Second, where the
> statutory language is plain and unambiguous,
> our sole duty is to give effect to its plain

19

> and obvious meaning. Third, implicit in the
> task of statutory construction is our
> foremost obligation to ascertain and give
> effect to the intention of the legislature,
> which is to be obtained primarily from the
> language contained in the statute itself.
> Fourth, when there is doubt, doubleness of
> meaning, or indistinctiveness or uncertainty
> of an expression used in a statute, an
> ambiguity exists.
>
> Peterson v. Hawaii Elec. Light Co., Inc., 85
> Hawai`i 322, 327-28, 944 P.2d 1265, 1270-71
> (1997), superseded on other grounds by HRS
> § 269-15.5 (Supp. 1999) (block quotation format,
> brackets, citations, and quotation marks omitted).
>
> In the event of ambiguity in a statute, "the
> meaning of the ambiguous words may be sought by
> examining the context, with which the ambiguous
> words, phrases, and sentences may be compared, in
> order to ascertain their true meaning." Id.
> (quoting HRS § 1-15(1) (1993)). Moreover, the
> courts may resort to extrinsic aids in determining
> legislative intent, such as legislative history,
> or the reason and spirit of the law. See HRS
> § 1-15(2) (1993).

State v. Bayly, 118 Hawai`i 1, 6-7, 185 P.3d 186, 191-92 (2008);

accord Castle Family LLC v. The Kailuan Inc., No. 29118, 2010 WL

2059221, at *1 (Hawai`i Ct. App. May 25, 2010) (citing Sierra

Club v. Dep't of Transp. of State of Hawaii, 120 Hawai`i 181,

197, 202 P.3d 1226, 1242, reconsideration denied, 2009 WL 1567327

(2009); Bhakta v. County of Maui, 109 Hawai`i 198, 208, 124 P.3d

943, 953 (2005); Hawaii Home Infusion Assocs. v. Befitel, 114

Hawai`i 87, 91, 157 P.3d 526, 530 (2007)) (similar recitation of

the principles of statutory interpretation).

## II.  **Other Decisions in Similar Cases**

Plaintiffs urge the Court to reject Defendant's argument that their unpaid wages claim fails as a matter of law, in accord with the prior decisions of other district judges in this district and the state court in Gurrobat.

United States District Judge David Alan Ezra has ruled that: "Based on the plain language of the statutes, Plaintiffs' allegations suffice to state a cause of action under § 388-6." [Rodriquez Dismissal Order at 55 (citation omitted).]

Senior United States District Judge Alan C. Kay has ruled that

> because for purposes of H.R.S. § 388, the statutory definition of wages includes tips, and because pursuant to H.R.S. § 481B-14 a service charge received by the employers without notice to the customers is deemed a tip, . . . . the employees have a claim against the employer for compensation that has been withheld.

Wadsworth Dismissal Order, 2010 WL 5146521, at *12.

Judge Gillmor has ruled, in denying a motion to dismiss the unpaid wages claim, that: "Based on the language of the relevant statutes, Plaintiffs (sic) allegations are sufficient to state a plausible claim for unpaid wages under H.R.S. § 388-6." Davis Dismissal Order, 2010 WL 3946428, at *15.  Judge Gillmor reaffirmed this ruling in granting summary judgment to the plaintiffs on the unpaid wages claim.  Davis Summary Judgment Order, 2011 WL 3841075, at *8 ("In short, Chapter 380 of the

Hawaii Revised Statutes provides employees with a cause of action for the withholding of wages, including tip income. H.R.S. § 481B-14 requires hotels and restaurants to pay service charges to employees as tip income if they do not disclose their contrary practice to customers.").

The state court in Gurrobat granted summary judgment in favor of the plaintiff because it ruled that, for a number of reasons, § 388-6 and § 481B-14 can be read together. [Gurrobat Trans. at 13-16.]

First, the orders issued by other district judges in this district are not binding on this Court. See, e.g., Hart v. Massanari, 266 F.3d 1155, 1174 (9th Cir. 2001) (holding that the binding authority rule could "just as easily operate so that the first district judge to decide an issue within a district, or even within a circuit, would bind all similarly situated district judges, but it does not"); City of Fresno v. United States, 709 F. Supp. 2d 888, 909 (E.D. Cal. 2010) ("District court opinions are relevant for their persuasive authority but they do not bind other district courts within the same district." (citation omitted)). This Court may consider them for their persuasive value, but, for the reasons set forth *infra*, this Court respectfully disagrees with those orders.

Further, the Court does not consider the state court's ruling in Gurrobat to be indicative of how the Hawai`i Supreme

Court would rule on this issue.  The <u>Gurrobat</u> proceedings have

concluded, but, as of the date of this Order, no judgment has

been entered and no notice of appeal has been filed.  Hawai`i

State Judiciary's Public Access to Court Information, at:

http://hoohiki2.courts.state.hi.us/jud/Hoohiki/main.htm,

1CC08-1-002528.  Further, this Court is not persuaded by the

reasoning in <u>Gurrobat</u> because this Court believes that the state

court's ruling was based in part on a faulty analysis of the

legislative intent behind § 481B-14 and § 388-6.  This Court will

therefore conduct its own analysis of whether the statutes in

question are ambiguous and, if so, what § 481B-14's legislative

history indicates was the Legislature's intent.

## III. **Whether the Statutes are Ambiguous**

Section § 481B-14 states that, where a hotel or

restaurant fails to make the required disclosure, it must

distribute the entire service charge "directly to its employees

as **tip income**".  (Emphasis added.)  The term "tip income" does

not appear anywhere else in the Hawai`i Revised Statutes.

Under Chapter 388, the term "wages" generally refers to

> compensation for labor or services rendered by an
> employee, whether the amount is determined on a
> time, task, piece, commission, or other basis of
> calculation.  It shall include the reasonable
> cost, as determined by the director under chapter
> 387, to the employer of furnishing an employee
> with board, lodging, or other facilities if such
> board, lodging, or other facilities are
> customarily furnished by the employer to the

> employer's employees **but shall not include tips or
> gratuities of any kind** . . . .

Haw. Rev. Stat. § 388-1 (emphasis added). The exception to this
rule is that "for the purposes of section 388-6, 'wages' shall
include tips or gratuities of any kind." The term "tip" or
"tips" does not appear anywhere else in Chapter 388.

First, in this Court's view, the mere use of the term
"tip income" in § 481B-14 does not plainly signal that Chapter
388's enforcement mechanisms apply. Section 388-1 refers to
"tips . . . of any kind". In drafting § 481B-14, the Legislature
could have simply stated that, where the hotel or restaurant
failed to make the required disclosure, it must distribute the
entire service charge as tips. The Legislature, however, chose
not to do so.

In attempting to construe § 481B-14 together with
Chapter 388, as Plaintiffs argue the Court should, this Court
assumes from the Legislature's use of the two different terms
"tip income" and "tips" that the terms have different meanings.
In <u>Casumpang v. ILWU Local 142</u>, the Hawai`i Supreme Court stated:

> In examining chapter 388, we note that HRS
> § 388-4 states: "Where an employee dies leaving
> any *wages, vacation, or sick leave pay* due to the
> employee, the employer shall . . . pay the *wages,
> vacation, or sick leave pay* [to the surviving
> spouse or adult child]." (Emphases added.)
> "Vacation" and "sick leave" pay are mentioned
> separately elsewhere in the chapter, and "wages"
> alone is mentioned throughout the remaining
> provisions. Therefore, in construing HRS § 388-3
> in the context of the entire statute and HRS

24

> § 388-4 in particular, it appears that the
> legislature intended "wages" to be distinct from
> "vacation pay."  Moreover, there is nothing to
> indicate that the legislature intended to include
> "vacation pay" under "wages," and thereby
> supersede the common law.

108 Hawai`i 411, 421, 121 P.3d 391, 401 (2005) (alterations and
emphases in Casumpang).  The Court acknowledges that the
distinction between "tip income" and "tips" is not as clear as
the distinction between "wages" and "vacation pay" because the
term "tip income" is not used elsewhere in either Chapter 481B or
Chapter 388 and construing "tip income" as "tips" would not
result in implicitly superseding a well-established common law
rule.[9]  At the very least, however, Casumpang indicates to this
Court that the possible distinction between "tip income" and
"tips" indicates an ambiguity in the statutes.

Further, if the Legislature intended for "tip income"
in § 481B-14 to mean the same thing as "tips" in § 388-6, it
could have defined "tip income" with reference to § 388-6.  It is

---

[9] The Court, however, notes that an interpretation of "tip
income" that would render a hotel's service charge a "tip" would
be contrary to Haw. Admin. R. § 12-20-1, which states, in
pertinent part: "'Tip' means a sum of money determined solely by
a customer and given in recognition of service performed by an
employee who retains it as a gift or gratuity. . . . **Compulsory
or negotiated service charges . . . are not counted as tips**."
(Emphasis added.)  Section 12-20-1 was effective October 2, 1981,
and has not been amended since.  Thus, it was in effect at the
time the Legislature enacted § 481B-14.  "[T]he legislature is
presumed to know the law when enacting statutes[.]"  Tamashiro v.
Dep't of Human Servs., 112 Hawai`i 388, 427, 146 P.3d 103, 142
(2006) (some alterations in original) (citation and quotation
marks omitted).

telling that the Legislature did not do so.  <u>See</u> <u>Kaanapali</u>

<u>Hillside Homeowners' Ass'n ex rel. Bd. of Dirs. v. Doran</u>, 114

Hawai`i 361, 372, 162 P.3d 1277, 1288 (2007) ("had the

legislature intended that the definition of a 'planned community

association' be the same for both statutes, the legislature could

have defined the phrase in HRS § 607-14 by reference to the

definition in chapter 421J.  The legislature did not.").  This

Court must also consider the fact that to assume "tip income" and

"tips" mean the same thing would render the word "income"

superfluous.  The Hawai`i Supreme Court has stated:

> It is a cardinal rule of statutory construction
> that courts are bound, if rational and
> practicable, to give effect to all parts of a
> statute, and that no clause, sentence, or word
> shall be construed as superfluous, void, or
> insignificant if a construction can be
> legitimately found which will give force to and
> preserve all the words of the statute.

<u>Hawaii Gov't Emps. Ass'n, AFSCME Local 152, AFL-CIO v. Lingle</u>,

124 Hawai`i 197, 208 n.16, 239 P.3d 1, 12 n.16 (2010) (quoting

<u>Camara v. Agsalud</u>, 67 Haw. 212, 215-16, 685 P.2d 794, 797

(1984)).  If the Legislature did intend, as the use of the

different terms suggests, that "tip income" is distinguishable

from "tips", it is not readily apparent what that distinction is.

This is, however, support for Defendant's position that the

statutes are ambiguous, requiring an examination of the

Legislature's intent as evidenced in the legislative history.

This Court also notes that the exception to the general rule that tips are not considered wages only applies to § 388-6. Haw. Rev. Stat. § 388-1. It does not apply to § 388-10, which sets forth the penalties for the "fail[ure] to pay wages in accordance with" Chapter 388, and it does not apply to § 388-11, which provides for an "[a]ction by an employee to recover unpaid wages". Thus, even assuming *arguendo* that a service charge required to be paid to an employee under § 481B-14 was part of "wages" under § 388-6, there is an ambiguity as to whether the employee has a cause of action under § 388-10 and § 388-11 because the service charge would not be part of "wages" under those enforcement statutes.

Finally, the Court notes that, although titled "Withholding of wages", § 388-6 prohibits employers from, *inter alia*, retaining "any part or portion of any **compensation earned** by any employee . . . ." (Emphasis added.) Section 388-1 states that "wages" include tips and that "'[w]ages' means compensation for labor or services rendered by an employee[.]" Section 388-1 does not refer to "compensation earned", a term that is not used anywhere in Chapter 388 except for § 388-6. This Court cannot assume that the word "earned" is meaningless. Assuming that the term "earned" has its ordinary meaning,[10] a service charge, or

---

[10] Black's Law Dictionary defines "earn" as "1. To acquire by labor, service, or performance. 2. To do something that
(continued...)

portion thereof, which an employer must pay its employee under
§ 481B-14 because the employer failed to make the required
disclosure, would not be "earned" by the employee.  The operation
of the statute, not anything that the employee did, triggered the
payment.  Moreover, where the employer makes the required
disclosure, the employer may legally retain the **entire** service
charge and the employee would not be entitled to any portion of
the service charge as payment for his services rendered.  In this
Court's view, a payment required by § 481B-14 is in the nature of
a penalty to the hotel or restaurant for failure to make the
required disclosure, not compensation that the employee earns by
reason of his labor or services.

Thus, although the term "tip income" in § 481B-14 is
similar to the reference in § 388-1 to "tips . . . of any kind",
for the reasons stated above, this Court respectfully disagrees
with the prior orders in this district and with the state court's
ruling in Gurrobat.  This Court is therefore inclined to conclude
that there is "doubt, . . . indistinctiveness or uncertainty of
an expression used in a statute", namely the term "tip income" in

---

[10](...continued)
entitles  one to a reward or result, whether it is received or
not."  Black's Law Dictionary 584 (9th ed. 2009).  The Hawai`i
Supreme Court has recognized that it "may resort to legal or
other well accepted dictionaries as one way to determine the
ordinary meaning of certain terms not statutorily defined."
Rapozo v. Better Hearing of Hawaii, LLC, 119 Hawai`i 483, 493,
199 P.3d 72, 82 (2008) (citation and quotation marks omitted).

§ 481B-14.  <u>See</u> <u>State v. Bayly</u>, 118 Hawai`i 1, 6, 185 P.3d 186, 191 (2008) (citation and block quote format omitted).  Thus, the relevant statutes in this case are ambiguous.  Further, because the Court cannot determine the true meaning of the term "tip income" merely by examining the context in which it appears, the Court must resort to extrinsic aids, in particular the legislative history of § 481B-14, to determine the Legislature's intent.  <u>See</u> <u>id.</u> at 7, 185 P.3d at 192 (citing HRS § 1-15(2) (1993)).

## IV. <u>Legislative History of § 481B-14</u>

In 2000, the Legislature passed H.B. 2123, which enacted § 481B-14.  2000 Haw. Sess. Laws Act 16, § 2 at 22.  The original version of H.B. 2123, entitled "A BILL FOR AN ACT RELATING TO WAGES AND TIPS OF EMPLOYEES", would have amended Haw. Rev. Stat. § 387-1 to add a definition of "Tips" and would have amended § 388-6.  It proposed, in pertinent part:

> SECTION 2.  Section 387-1, Hawaii Revised Statutes, is amended as follows:
> 1.  By adding a new definition to be appropriately inserted and to read:
> ""<u>Tips" means gratuities in the form of money paid by a customer or added to a customer's charge either voluntarily or as a service charge by the employer.</u>"
> . . . .
> SECTION 4.  Section 388-1, Hawaii Revised Statutes, is amended by amending the definition of "wages" to read as follows:
> ""Wages" means compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission, or other basis of calculation. . . .

but shall not include tips or gratuities of any
kind[, provided that for the purposes of section
388-6, "wages" shall include tips or gratuities of
any kind]."

SECTION 5.  Section 388-6, Hawaii Revised
Statutes, is amended to read as follows:

"**§388-6 Withholding of wages[.]; tips.**  No
employer may deduct, retain, or otherwise require
to be paid, any part or portion of any
compensation or tip earned by, or ascribed on a
customer's bill or charge as a tip or gratuity to,
any employee except where required by federal or
state statute or by court process or when such
deductions or retentions are authorized in writing
by the employee:

. . . .

SECTION 6.  Statutory material to be repealed
is bracketed.  New statutory material is
underscored.

H.B. 2123, 20th Leg., Reg. Sess. (2000).

On February 4, 2000, the House of Representatives

Committee on Labor and Public Employment ("House Labor

Committee") held a hearing on H.B. 2123.  The International

Longshore and Warehouse Union, Local 142 ("ILWU") and the Hawai`i

Department of Labor and Industrial Relations ("DLIR") gave

testimony against the bill, [Rand Opp. Decl., Exh. D (Testimony

on Behalf of ILWU Local 142), Exh. C (DLIR testimony),] and the

House Labor Committee cited this testimony as part of its reasons

for converting H.B. 2123 from a wage and hour bill into a

consumer protection bill.  H. Stand. Comm. Rep. No. 479-00, in

2000 House Journal, at 1155-56.

The ILWU stated that: defining service charges as tips

could be confusing and lead to unwanted tax consequences for

30

employees and employers; the word "tips" was well-understood and did not need definition, particularly because § 388-1 already distinguished "tips" and "wages"; the current law already protected employees from the withholding of tips for illegal reasons; and the bill would create problems in the collection of union dues. [Rand Opp. Decl., Exh. D.]

The DLIR stated that: under Haw. Admin. R. § 12-20-1, a compulsory or negotiated service charge was expressly excluded from the definition of a "tip";[11] and the definition of tips in § 12-20-1 was consistent with the United States Department of Labor's definition in the administration of the federal Fair Labor Standards Act, which is the counterpart of Haw. Rev. Stat. Chapter 387, and differing definitions would create confusion for employers and employees. The DLIR was also concerned that including service charges within tips would be detrimental to employers, who could neither count the service charges toward their minimum wage requirements nor take any tip credit. [Rand Opp. Decl., Exh. C.]

The House Labor Committee ultimately decided to abandon the amendments to the wage and hour laws in favor of a new section in the consumer protection laws. H. Stand. Comm. Rep. No. 479-00. The House Labor Committee stated:

_____

[11] As noted *supra* note 9, the version of Haw. Admin. R. § 12-20-1 in existence in 2000 still exists today.

> Based on the concerns raised and after much
> discussion, your Committee concluded that the
> problem lies with consumers who may not leave tips
> for the service employees, mistakenly thinking
> that the service charges they paid were tips so
> they did not leave additional tips for the service
> employees.
>
> Therefore, your Committee has amended the
> bill by deleting its contents and inserting a new
> section regarding unfair and deceptive business
> practices. . . .

Id., in 2000 House Journal, at 1155. The Court assumes that,

when the House Labor Committee amended H.B. 2123 to place the new

provision within Hawai`i consumer protection laws, instead of

within the wage and hour laws, the Legislature was aware that the

consumer protection laws have their own enforcement mechanism,

Haw. Rev. Stat. § 480-13. Tamashiro v. Dep't of Human Servs.,

112 Hawai`i 388, 427, 146 P.3d 103, 142 (2006) ("[T]he

legislature is presumed to know the law when enacting

statutes[.]" (some alterations in original) (citation and

quotation marks omitted)); see also Davis v. Four Seasons Hotel

Ltd., 122 Hawai`i 423, 440, 228 P.3d 303, 320 (2010) ("the

legislature chose to place HRS § 481B-14 within Hawaii's consumer

protection statutes and provided that it be enforced through HRS

§ 480-13").

The House Labor Committee's amended version of H.B.

2123 stated, inter alia:

> SECTION 2. Section 481B, Hawaii Revised
> Statutes, is amended by adding a new section to be
> appropriately designated and to read as follows:

"**§481B-       Service charge.** Any hotel or
restaurant applying a service charge for the sale
of food or beverage services shall distribute the
service charge to its employees or else clearly
disclose to the purchaser of such services that
the service charge is being used to pay for costs
or expenses other than wages and tips of
employees."
SECTION 3.  New statutory material is
underscored.

H.B. 2123, H.D. 1, 20th Leg., Reg. Sess. (2000).[12]

After the bill's conversion, the House Committee on
Finance ("House Finance Committee") noted that the purpose of the
bill was

> to prevent unfair and deceptive business practices
> by requiring hotels or restaurants that apply a
> service charge for the sale of food or beverage,
> to disclose to the purchaser that the service
> charge is being used to pay for costs or expenses
> other than wages and tips of employees, if the
> employer does not distribute the service charge to
> its employees.

H. Stand. Comm. Rep. No. 854-00, in 2000 House Journal, at 1298.

The House Finance Committee made revisions to H.B. 2123
H.D. 1, which it called "technical, nonsubstantive amendments for
purposes of clarity and style."  Id.  The House Finance
Committee's version of H.B. 2123 stated, *inter alia*:

> SECTION 2.  Section 481B, Hawaii Revised
> Statutes, is amended by adding a new section to be
> appropriately designated and to read as follows:
> "**§481B-       Service charge.** Any hotel or
> restaurant that applies a service charge for the
> sale of food or beverage services shall distribute

─────────────────

[12] H.B. 2123, H.D. 1 is attached to Plaintiffs' Reply as
Exhibit 3, pages 3-4.  [Dkt. no. 110-3.]

> the service charge <u>directly to its employees as</u>
> <u>tip income or clearly disclose to the purchaser of</u>
> <u>the services that the service charge is being used</u>
> <u>to pay for costs or expenses other than wages and</u>
> <u>tips of employees.</u>"
>     SECTION 3.  New statutory material is
> underscored.

H.B. 2123, H.D. 2, 20th Leg., Reg. Sess. (2000) (double underline

emphases added).[13]  The title of the bill remained the same

throughout all drafts.

    The Senate Committee on Commerce and Consumer

Protection ("Senate Commerce Committee") next reviewed H.B. 2123,

H.D. 2, and noted that the purpose of the bill was "to enhance

consumer protection with respect to service charges imposed by

hotels and restaurants on the sale of food and beverages."

S. Stand. Comm. Rep. No. 3077, in 2000 Senate Journal at 1286.

The Senate Commerce Committee noted that the general

understanding was that hotels and restaurants apply service

charges in lieu of voluntary tips.  Thus, most customers do not

tip for those services because they assume that the service

charges are distributed to the service employees.  Hotels and

restaurants, however, do not always distribute the service

charges to the service employees; sometimes the establishment

uses them for administrative costs.  <u>Id.</u>  The Senate Commerce

Committee stated:

---

[13] H.B. 2123, H.D. 2 is attached to Plaintiffs' Reply as
Exhibit 2.  [Dkt. no. 110-2.]

> This measure is intended to prevent consumers
> from being mislead about the application of moneys
> they pay as service charges by requiring under the
> Unfair Deceptive Practices Act that a hotel or
> restaurant distribute moneys paid by customers as
> service charges directly to its employees as tip
> income, or disclose to the consumer that the
> service charge is being used to pay for the
> employer's costs or expenses, other than wages and
> tips.

<u>Id.</u> at 1287.  H.B. 2123, H.D. 2 passed without any further
amendments.  2000 Haw. Sess. Laws Act 16, § 2 at 22.

**V.    <u>ANALYSIS OF LEGISLATIVE HISTORY</u>**

Defendant has argued that § 481B-14 and § 388-6 cannot
be read *in pari materia*.  Haw. Rev. Stat. § 1-16 states: "Laws in
pari materia, or upon the same subject matter, shall be construed
with reference to each other.  What is clear in one statute may
be called in aid to explain what is doubtful in another."  This
Court initially presumes that § 481B-14 and § 388-6 cannot be
read *in pari materia* because they deal with completely different
subjects, consumer protection through the prevention of unfair
competition and unfair or deceptive practices, as opposed to the
payment of employees' wages and other compensation, and each
chapter has its own enforcement mechanisms.  Thus, the mere fact
that § 481B-14 and § 388-6 use similar terms, "tip income" and
"tips", does not mean that one statute controls as to the other.
The Hawai`i Supreme Court rejected a similar argument in <u>State v.
Mata</u>:

35

> HRS § 291-4(a)(1) provides that the offense
> is committed when: "The person operates or assumes
> actual physical control of the operation of any
> vehicle while under the influence of intoxicating
> liquor[.]"
> Appellant has argued that we should import
> into that section the definition appearing in HRS
> § 281-1 as follows:
>> "Under the influence of liquor" means
>> that the person concerned has consumed
>> intoxicating liquor sufficient to impair at
>> the particular time under inquiry the
>> person's normal mental faculties or ability
>> to care for oneself and guard against
>> casualty, or sufficient to substantially
>> impair at the time under inquiry that
>> clearness of intellect and control of oneself
>> which the person would otherwise normally
>> possess.
>> HRS Chapter 281 regulates the sale of liquor
> and liquor establishments. HRS Chapter 291
> regulates traffic violations. The chapters serve
> different purposes and are not in pari materia.
> The definition in HRS § 281-1 does not control the
> meaning of the term "under the influence of
> intoxicating liquor" as used in HRS § 291-4(a)(1).

71 Haw. 319, 330, 789 P.2d 1122, 1128 (1990) (alteration in

Mata). The Court therefore is not inclined to read § 481B-14 and

§ 388-6 together absent clear indication that the Legislature

intended them to be read together.

Plaintiffs argue that the two statutes must be read *in pari materia* based in part on the fact that the title of H.B. 2123 was always "RELATING TO WAGES AND TIPS OF EMPLOYEES." [Pltfs.' Reply at 9 (quoting 2000 Haw. Sess. Laws Act 16, at 21).] Plaintiffs contend that this alone contradicts Defendant's argument that § 481B-14 and § 388-6 should not be read *in pari materia*. [Id.] The state court in Gurrobat also noted H.B.

2123's title in concluding that the two statutes are *in pari materia* for purposes of Haw. Rev. Stat. § 1-16 and <u>Albert v. Dietz</u>, 283 F. Supp. 854, 856 (D. Hawai`i 1968) ("It is solidly established under the Hawaii law that statutes having reference to the same subject matter are in pari materia and are to be construed with reference to each other." (footnote omitted)). The court in <u>Gurrobat</u> stated:

> 388-6 relates to withholding of wages. Likewise, HRS 481B-14 was originally introduced as Act 16 (House Bill 2123) during the 2000 Legislative Session and is entitled, "Relating to Wages and Tips of Employees."
> Accordingly, the Court believes 388-6 and 481B-14 can be read together.

[<u>Gurrobat</u> Trans. at 13-14.]

As Defendant points out, according to legislative drafting rules, a bill has one title and it should not be amended. Thus, there is no significance to the fact that the title of H.B. 2123 remained the same after the House Labor Committee abandoned the amendments to Chapters 387 and 388 in favor of a new provision in Chapter 481B. [Def.'s Reply at 3-4 (citing Hawaii Legislative Drafting Manual).] Further, the Hawai`i Supreme Court stated in the <u>Davis</u> Opinion that it did not believe the title of H.B. 2123 was dispositive in determining who could enforce § 481B-14.

> Employees argue that "[t]he title to the Act is pivotal in dismantling Defendants' claim that the law was not meant to benefit employees because the Hawaii Constitution provides at Article III,

37

> Section 14 that: 'No law shall be passed except by
> bill. Each law shall embrace but one subject,
> which shall be expressed in its title.'" However,
> although we believe the title is instructive in
> that it appears to reflect the legislature's
> concern that employees may not always be receiving
> the service charges imposed by their employers, we
> do not believe it is dispositive of the issue of
> whether the legislature intended to afford
> Employees standing to sue for HRS § 481B-14
> violations.

Davis v. Four Seasons Hotel Ltd., 122 Hawai`i 423, 433 n.17, 228

P.3d 303, 313 n.17 (2010). Similarly, in light of the

Legislature's general rule that bill titles are not amended, this

Court predicts that the Hawai`i Supreme Court would hold that the

title of H.B. 2123 is not dispositive of the issue whether the

Legislature intended to allow employees to enforce § 481B-14

through Chapter 388.

Plaintiffs also argue that prohibiting employees from

using § 388-6 to bring claims based on § 481B-14 violations would

render superfluous the amendment in H.B. 2123 H.D. 2 - included

after the bill's conversion to address Chapter 481B - stating

that, where a payment is made because of a lack of disclosure,

the payment is "tip income". [Pltfs.' Reply at 10-11 (citations

omitted).] Plaintiffs essentially contend that the term "tip

income" is a reference to Chapter 388 and evidence of the

Legislature's implicit authorization of the use of Chapter 388's

remedies.

Plaintiffs' argument is inconsistent with the legislative history. Nothing in H.B. 2123 H.D. 1 or the accompanying committee report can be construed as an implicit adoption of the remedies in Chapter 388. If the addition of the "tip income" language in H.D. 2 was an implicit adoption of the remedies in Chapter 388, it would have been a significant substantive change from H.D. 1. That is inconsistent with the House Finance Committee's characterization of its revisions made in H.B. 2123 H.D. 2 as "technical, nonsubstantive amendments for purposes of clarity and style." H. Stand. Comm. Rep. No. 854-00, in 2000 House Journal, at 1298. Moreover, when the Legislature changed H.B. 2123 to add a new section in Chapter 481B instead of revising, *inter alia*, § 388-6, the Legislature was aware that, under Haw. Rev. Stat. § 481B-4, violations of Chapter 481B were enforceable under Haw. Rev. Stat. § 480-2.[14] See Tamashiro, 112 Hawai`i at 427, 146 P.3d at 142 (2006). The Court is therefore inclined to find that the legislative history of § 481B-14 does not support Plaintiffs' position that the use of the term "tip

---

[14] Haw. Rev. Stat. § 481B-4 states: "Any person who violates this chapter shall be deemed to have engaged in an unfair method of competition and unfair or deceptive act or practice in the conduct of any trade or commerce within the meaning of section 480-2." Haw. Rev. Stat. § 480-2(a) states that: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." Section 480-2(e) states: "Any person may bring an action based on unfair methods of competition declared unlawful by this section." The specific remedies available in such action are set forth in Haw. Rev. Stat. § 480-13.

income" in that section allows § 481B-14 and § 388-6 to be read together.

This Court also notes that, as part of its analysis of the plaintiff's motion for partial summary judgment, the state court in Gurrobat reasoned, "because 481B-14 was originally drafted as an amendment to HRS 388-6, and is read in pari materia with 481B-14, the Court finds that there is similar legislative intent behind 388-6, in that it was intended to protect service employees and not managerial employees." [Gurrobat Trans. at 15.] The Court disagrees with this analysis. In this Court's view, it is impossible to ignore the fact that the original version of H.B. 2123 included proposed amendments to Chapters 387 and 388 that expressly included compulsory service charges in the definition of tips, but the Legislature adopted the House Labor Committee's decision to abandon those proposed amendments and to leave Chapters 387 and 388 unaltered, addressing the issue solely in a new provision of Chapter 481B. That decision cannot support a finding that § 481B-14 and § 388-6 have the same legislative intent. Although this Court acknowledges the state court in Gurrobat made that comment in the context of the issue whether managerial employees were also entitled to share in service charges distributed to employees pursuant to § 481B-14, this Court believes that the state court's analysis was erroneous and

this diminishes the persuasive value of the state court's decision as a whole.

Finally, this Court notes that, in granting summary judgment on the unpaid wages claim to the <u>Davis</u> plaintiffs, Judge Gillmor stated:

> Although it is unnecessary to consider the legislative history of section 481B-14 insofar as its meaning, in relation to the wage protections provided by section 388-6, is unambiguous, the Hawaii Supreme Court's ruling in <u>Davis</u> reveals that the statute's legislative history supports the right of employees to sue for violations of section 481B-14. In <u>Davis</u>, the Hawaii Supreme Court reviewed the legislative history of section 481B-14 at length and concluded: "[T]he legislative history of HRS § 481B-14 does not reflect an intent to preclude enforcement by employees." 228 P.3d at 312. Summarizing its review of the legislative history, the court stated:
>
> > In sum, the legislative history . . . indicates that the legislature was concerned that when a hotel or restaurant withholds a service charge without disclosing to consumers that it is doing so, **both employees and consumers** can be negatively impacted. The legislature chose to address that concern by requiring disclosure and by authorizing enforcement of that requirement under HRS chapter 480. There is no clear indication in the legislative history that the legislature intended to limit enforcement to consumers, businesses, or competitors and to preclude enforcement by employees.
>
> <u>Id.</u> at 314 (emphasis added). The legislative history of section 481B-14 reflects a desire to prevent service workers from being deprived of tip income. <u>Id.</u> To the extent that the legislative history of section 481B-14 is relevant to the question of whether employees may sue for unpaid wages under section 388-6 based on violations of section 481B-14, that legislative history, as interpreted by the Hawaii Supreme Court in <u>Davis</u>,

provides support for the idea that employees may
                    do so.

<u>Davis</u> Summary Judgment Order, 2011 WL 3841075, at *7-8

(alterations and emphasis in <u>Davis</u> Summary Judgment Order).  This

Court agrees that the Hawai`i Supreme Court in the <u>Davis</u> Opinion

stated that legislative history of § 481B-14 supports the

proposition that the Legislature intended employees to be able to

enforce § 481B-14.  The Hawai`i Supreme Court, however, made

these statements while considering whether employees had standing

to enforce of § 481B-14 through § 480-2(e) and § 480-13.  The

portions of the legislative history cited in the <u>Davis</u> Opinion

address whether employees are entitled to enforce § 481B-14

through Chapter 480; they do not speak to the issues whether

Chapter 480 is an effective enforcement mechanism or whether

there are multiple mechanisms for employees to enforce § 481B-14.

As previously noted, the Hawai`i Supreme Court expressly stated

that it was not addressing the issue whether employees could

enforce § 481B-14 through §§ 388-6, 388-10, and 388-11.  <u>Davis</u>,

122 Hawai`i at 428 n.12, 228 P.3d at 308 n.12.

         For all of these reasons, this Court is inclined to

find that the legislative history of § 481B-14, when viewed in

the light of well-established principles of statutory

interpretation, indicates that the Legislature did not intend for

§ 481B-14 to be enforced through § 388-6.

                                    42

## VI. **Lack of a Remedy**

Plaintiffs contend that, unless the Court interprets § 481B-14 to allow employees to enforce violations through § 388-6, the law would not have the effect that the Legislature intended. [Mem. in Supp. of Pltfs.' Motion at 11.] The Legislature, however, did provide an enforcement mechanism for § 481B-14, § 480-2 and § 480-13. <u>Davis v. Four Seasons Hotel Ltd.</u>, 122 Hawai`i 423, 440, 228 P.3d 303, 320 (2010) ("the legislature chose to place HRS § 481B-14 within Hawaii's consumer protection statutes and provided that it be enforced through HRS § 480-13"). The Court recognizes that the Chapter 480 claim is difficult to prove under facts similar those in the instant case. Judge Ezra recognized that:

> [T]he <u>Davis</u> decision clarified that: (1) the <u>Davis</u> plaintiffs qualified as "persons who may bring a claim under H.R.S. § 480-2(e); (2) the <u>Davis</u> plaintiffs had standing to bring a private claim for unfair competition under H.R.S. §§ 481B-14 and 480-2 provided that they satisfied the requirements of H.R.S. § 480-13; (3) the essential elements of a claim under § 480-13 are: (a) a violation of Chapter 480; (b) that causes an "injury" to plaintiffs' business or property; and (c) damages; (4) to satisfy the second element under § 480-13, a plaintiff must allege injury in fact and the "nature of the competition"; and (5) the "nature of the competition" allegation requires a showing that a plaintiff's injury "necessarily stems from the negative effect on competition caused by the violation," <u>see</u> <u>Davis</u>, 228 P.3d at 320, as opposed to "some pro-competitive or neutral effect of the defendant's antitrust violation." <u>Id.</u> at 325

[<u>Rodriquez</u> Dismissal Order at 43-44 (footnote omitted).]

Judge Ezra granted the Rodriguez defendant's motion to dismiss the Chapter 480 claim without prejudice for failure to state a claim upon which relief could be granted.[15] [Id. at 50.]

Even if, however, the Chapter 480 claim is virtually impossible to prove in this case and Plaintiffs are left without a remedy to address the alleged violations of § 481B-14, it is not this Court's place to create a remedy that the Legislature did not provide for. A federal court sitting in diversity cannot create new state law causes of action. See, e.g., Woods v. Interstate Realty Co., 337 U.S. 535, 538 (1949) ("a right which local law creates but which it does not supply with a remedy is no right at all for purposes of enforcement in a federal court in a diversity case"); Guy v. Travenol Labs., Inc., 812 F.2d 911, 917 (4th Cir. 1987), abrogated on other grounds, as stated in Leach v. N. Telecom, Inc., 141 F.R.D. 420, 426 n.1 (E.D.N.C. 1991); Bouchet v. Nat'l Urban League, Inc., 730 F.2d 799, 807 (D.C. Cir. 1984); Wolk v. Saks Fifth Ave., Inc., 728 F.2d 221, 223 (3d Cir. 1984); Garland v. Herrin, 724 F.2d 16, 20 (2d Cir. 1983); Tarr v. Manchester Ins. Corp., 544 F.2d 14, 15 (1st Cir. 1976); accord Orkin v. Taylor, 487 F.3d 734, 741 (9th Cir. 2007)

---

[15] Judge Ezra noted that Judge Kay reached the same result in the Wadsworth Dismissal Order, and Judge Ezra respectfully disagreed with the Davis Dismissal Order, in which Judge Gillmor reached a different result. [Rodriguez Dismissal Order at 50 n.7 (discussing Davis Dismissal Order, 2010 WL 3946428, at *13; Wadsworth Dismissal Order, 2010 WL 5146521, at *26).]

("If the state's highest appellate court has not decided the question presented, then we must predict how the state's highest court would decide the question.  In doing so, we take state law as it exists without speculating as to future changes in the law." (citations omitted)).  This rule applies even where the enforcement mechanism within the chapter that the statute in question is a part of is arguably ineffective to enforce the statute in question.  Where the Legislature was silent as to any other available enforcement mechanisms for the statute in question, this Court cannot create new state law by inferring that the statute can be enforced through a statute in another, unrelated chapter.

       This Court is sympathetic to Plaintiffs' position.  There is an unjust and gaping hole in this statute: if Defendant ultimately prevails on Plaintiffs' Chapter 480 claim and Plaintiffs cannot enforce the alleged § 481B-14 violation through any other means, arguably no one will enforce the violation.  Even though the Resort's customers were mislead where the Resort failed to give the required disclosures and failed to distribute the full service charges to the Resort's food and beverage service employees, the customers did not suffer an injury as a result of the violation of § 481B-14.  Unfortunately, it is not this Court's place to sit as the Legislature does and to try to create a new enforcement mechanism to replace or supplement an

old one, no matter how inadequate and unfair the original statutory scheme may be.

For all of the foregoing reasons, this Court is inclined to find that Plaintiffs' unpaid wages claim, which seeks to enforce violations of § 481B-14 through §§ 388-6, 388-10, and 388-11, fails as a matter of law and does not state a claim upon which relief can be granted.

## VII. **Certifying Questions**

Although this Court has set forth the analysis of how it would rule on the question whether employees can enforce alleged violations of § 481B-14 through §§ 388-6, 388-10, and 388-11, the Court recognizes that reasonable minds can differ on this issue, as evidenced by the differing rulings in this district court and in the state court. This Court cannot conclude that it is reasonably clear which analysis the Hawai`i Supreme Court would adopt. Thus, the Court finds that there is no clear controlling precedent on this issue from the Hawai`i Supreme Court, and this Court cannot predict how the Hawai`i Supreme Court would rule on this issue. See Saiki v. LaSalle Bank Nat'l Ass'n as Tr. for Structured Asset Inv. Loan Trust Series 2003-BC2, Civil No. 10-00085 JMS/LEK, 2011 WL 601139, at *6 (D. Hawai`i Feb. 10, 2011).

The Court acknowledges that certification at this stage of the case is not ideal in light of the age of the case and the

46

fact that it has already been stayed once pending the answer to the certified question in <u>Davis</u>.  The question for certification, however, is an issue of first impression concerning the interpretation of a Hawai`i statute, and it is of great importance to employers and food and beverage service employees in the hotel and restaurant industries in Hawai`i, as evidenced by the number of similar cases that have been filed in this district court and the state courts.  The issue should therefore be decided by the Hawai`i Supreme Court.  The Court also notes that, even if this Court declined to certify the question to the Hawai`i Supreme Court and this case proceeded to an eventual judgment, there would likely be an appeal to the Ninth Circuit. The Ninth Circuit could be faced with conflicting rulings in this case and <u>Davis</u>, <u>Wadsworth</u>, <u>Rodriquez</u>, and potentially others.  It is a realistic possibility that the Ninth Circuit may, during the pendency of the appeals, decide to certify the same question to the Hawai`i Supreme Court which this Court is now considering. In this Court's view, certification now, while not ideal, would be more efficient and less prejudicial than certification on appeal.

The Court therefore CONCLUDES that it is appropriate to certify to the Hawai`i Supreme Court the question whether food and beverage service employees can enforce alleged violations of § 481B-14 through §§ 388-6, 388-10, and 388-11.

The Court will issue an order allowing the parties to comment upon the precise language of this question to be certified and whether the Court should certify any other questions, such as what statute of limitations applies if there is a cause of action to enforce § 481B-14 through §§ 388-6, 388-10, and 388-11.

## **CONCLUSION**

On the basis of the foregoing, the Court HEREBY ADMINISTRATIVELY TERMINATES, WITHOUT PREJUDICE, Plaintiffs' Motion for Partial Summary Judgment, filed April 29, 2011, and Defendant's Motion to Dismiss Amended Class Action Complaint Filed June 28, 2010 [Doc #60], filed May 18, 2011, in light of this Court's decision to certify the central question in this case to the Hawai`i Supreme Court.  After the Hawai`i Supreme Court responds to the certified question(s), the parties may re-file Defendant's Motion and Plaintiffs' Motion, and their respective memoranda supporting or opposing those motions, by filing a one-page notice.  The Court will thereafter issue a

schedule for limited briefing to address the Hawai`i Supreme Court's response to the certified question(s).

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, September 8, 2011.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**BERT VILLON AND MARK APANA V. MARRIOTT HOTEL SERVICES, INC., ETC; CIVIL NO. 08-00529 LEK-RLP; ORDER ADMINISTRATIVELY TERMINATING, WITHOUT PREJUDICE, PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT FILED JUNE 28, 2010 [DOC #60]**